IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

DAVID S. SCHWARTZ, *et al.*,          )
                                      )
                    Plaintiffs,       )
                                      )
v.                                    )          No. 07-CV-01679
                                      )
JJF MANAGEMENT SERVICES, INC.         )
*et al.*                              )
                                      )
                    Defendants.       )

DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR JUDGMENT
NOTWITHSTANDING THE VERDICT, MOTION FOR JUDGMENT
ON SPECIFIED CLAIMS, AND MOTION FOR A NEW TRIAL
ON DEFENDANTS' COUNTERCLAIM ONLY

Pursuant to Fed. R. Civ. Pro. 50(b) the Defendants, Rent-A-Wreck of America, Inc.

(RAWA) and Bundy American, LLC (Bundy), have moved the Court to enter judgment in their

favor, and against the Plaintiffs, David S. Schwartz and Rent-A-Wreck, Inc. (RAWI), on Counts

I, II, III, and IV of the Second Amended Complaint and on Count II of the Amended

Counterclaim to the extent alleges that the noncompetition provision of the 1985 Letter is void.

The Defendants also move for judgment on the parties' equitable claims that the Court has not

yet decided. In the alternative, the Defendants move for a new trial on their First Amended

Counterclaims only pursuant to Fed. R. Civ. Pro. 59.

ARGUMENT

## I. THE MOTION FOR JUDGMENT NOV SHOULD BE GRANTED

Rule 50(b)(1) provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule <u>50</u>(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment — or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged — the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

> (1) allow judgment on the verdict, if the jury returned a verdict;

> (2) order a new trial; or

> (3) direct the entry of judgment as a matter of law.

<u>Fed. R. Civ. Pro.</u> 50(b)(1). A motion for judgment nov must be granted when "there is no legally sufficient evidentiary basis" for the verdict viewing the facts in the light most favorable to the non-moving party. <u>First Un. Commercial Corp. v. Gatx Cap. Corp.</u>, 411 F.3d 551 (4th Cir. 2005)

### A. There is no legally sufficient evidence in the record to support the jury verdict that the Plaintiffs have an exclusive RAWA franchise

Assuming arguendo that the jury's finding of an express or implied franchise contract is supported by the evidence, however, the Court must grant judgment notwithstanding the verdict on the finding that the franchise is an *exclusive* one – i.e., that RAWA may not compete with the Plaintiffs in the specified area.  That finding is in direct violation of the applicable law.

In addition to finding that the Plaintiffs have a contract with the Defendants with respect to the operation of a used car rental business in West Los Angeles, the jury found that the Plaintiffs have an "exclusive RAWA franchise …in West Los Angeles as delineated in or after

2

1985." (Special Verdict 3). The sole evidence in the record supporting this finding are: (1) two

paragraphs contained in the 1985 Letter wherein the Plaintiffs agreed to cooperate in the public

offering in exchange for the consideration provided and; (2) the evidence that RAWA did not

grant any franchises to third parties in this area since the date of the letter.

Paragraph 3 of this letter provides in pertinent part:

> 3.  Effective with the Closing Date, RAW [Rent-A-Wreck of America, Inc.], shall
> enter into a three year employment agreement with me at an annual salary of
> $100,000…I shall not engage in any activities that compete with the business of
> RAW, except activities in the protected territory described below, including the
> running of my Bundy Rent A Wreck operation in West Los Angeles.

Paragraph 7 addresses the so-called "protected area":

> 7. RAW hereby agrees that it will grant no franchises, nor open an RAW owned
> or affiliated operations in the territory defined as follows….I agree not to operate
> more than one rental location within the protected territory defined above, nor to
> sell rights to all or any part of such territory to anyone other than RAW.

The Court, however, must grant judgment notwithstanding the verdict on the jury's finding that

the Plaintiffs have an <u>exclusive</u> franchise contract because California law provides that

noncompetition agreements of this nature are void *ab initio*. California has rejected the common

law rule that noncompetition agreements are generally enforceable if reasonable as to

geographical scope and duration. Instead, California by statute provides that *all such contracts*

*are void,* except as otherwise provided by statute:

> Except as provided in this chapter, every contract by which anyone is restrained
> from engaging in a lawful profession, trade, or business of any kind is to that
> extent void.

Cal. Bus. Pro. Code  § 166600. "This Is A Codification Of "The General Rule In

California [That] Covenants Not To Compete Are Void." Comedy Club, Inc. v. Improv West Associates, 553 F.3d 1277 (9th Cir. 2009) quoting Hill Med. Corp. v. Wycoff, 86 Cal.App.4th 895, 901, 103 Cal.Rptr.2d 779 (2001). The only statutory exception potentially applicable to this case is the sale of business exception. A seller of a business, or the goodwill thereof, may lawfully agree not to compete with the buyer:

> Any person who sells the goodwill of a business, or any owner of a business entity selling or otherwise disposing of all of his or her ownership interest in the business entity, or any owner of a business entity that sells (a) all or substantially all of its operating assets together with the goodwill of the business entity, (b) all or substantially all of the operating assets of a division or a subsidiary of the business entity together with the goodwill of that division or subsidiary, or (c) all of the ownership interest of any subsidiary, may agree with the buyer to refrain from carrying on a similar business within a specified geographic area in which the business so sold, or that of the business entity, division, or subsidiary has been carried on, so long as the buyer, or any person deriving title to the goodwill or ownership interest from the buyer, carries on a like business therein.

Cal. Bus. Pro Code § 166601. As the California Court of Appeals has explained, the rationale underlying this exception is to prevent the seller from depriving the buyer of the full value of the acquisition, including the good will:

> The reason for this exception to the general rule against noncompetition covenants is to prevent the seller from depriving the buyer of the full value of its acquisition, including the sold company's goodwill. ... "It was the policy of the [common] law, within reasonable limits, to protect the purchaser in the enjoyment of the good will which he had purchased and paid for." (...the sold business's goodwill is the ""expectation of . . . that patronage which has become an asset of the business.""" .... The geographic scope of a noncompetition covenant must be limited to the area where the sold company carried on business because "[o]therwise, a seller could be barred from engaging in its business in places where it poses little threat of undercutting the company it sold to the buyer." (ibid.)

Alliant Ins. Serv. v. Gaddy, 159 Cal.App.4th 1292, 72 Cal.Rptr.3d 259 (2008).

The California Court of Appeals recently reiterated that the statute prohibiting noncompetition agreements reflects California's strong policy of free competition:

> Section 16600 expresses California's strong public policy of protecting the right of its citizens to pursue any lawful employment and enterprise of their choice. …California courts "have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility." .."The interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change." …Based on the foregoing it is clear that the noncompete and nonsolicitation clauses in the agreements with Dowell and Chapman are void and unenforceable under section 16600

Dowell v. Biosense Webster, Inc., 179 Cal.App.4th 564, 570, 102 Cal.Rptr.3d 1 (2009).

As the foregoing statutes and cases demonstrate, the "protected area" in the 1985 Letter was *void ab initio,* unless the signatories of the 1985 Letter *in that contract* sold a business to Mr. Schwartz, the goodwill of a business, or substantially all of the operating assets and the good will of the business. The plain language of the 1985 Letter defeats any such construction of the letter – there simply is no language in that document that remotely suggests that the signatories sold any business, goodwill or operating assets to Schwartz.

To the contrary, the only reasonable construction of the 1985 Letter and other evidence presented is that, in return for his promise to cooperate in the public offering, the signatories simply granted a protected area to RAWI and Schwartz to operate their independent *and preexisting* car rental business in return for Schwartz's promise to cooperate with the planned public offering of RAWA, and that RAWA subsequently ratified this agreement.[1]

---

[1] The signatories of the letter, of course, provided other consideration to Schwartz in addition to the void protected area.

Nor may the noncompetition provision in the 1985 Letter be upheld on the theory that Schwartz purchased a business, goodwill, or operating assets in the 1977 Letter with a noncompetition provision, and that the 1985 Letter simply reduced the scope of this provision. This argument fails as matter of law because Schwartz did not purchase any business, goodwill, or operating assets in the 1977 Letter and, in any event, the 1977 letter does not contain a noncompetition provision.

The 1977 Letter did contemplate that Schwartz would assign all of his interest in the name "Rent A Wreck" to the new corporation, excepting Los Angeles County:

But this is not an agreement by the new corporation not to compete in Los Angeles County - it is simply a promise to except Los Angles County from the assignment of the tradename. And here the new corporation is *the buyer*, not Schwartz – Schwartz is the seller.   There is no statute that permits *a buyer* to agree not to compete with a seller. In any event, Schwartz subsequently executed as assignment of the tradename to Bundy American without any exception.

There accordingly is absolutely no evidence – or any legal theory – that would allow the protected area to be upheld under California law. To the extent that the verdict can be construed as the granting of a franchise by an implied in fact contract *before* the 1985 Letter, there is no evidence that any term of this implied agreement included a noncompetition agreement. To the extent that the verdict can be construed as the granting of a franchise by an implied in fact contract *after* the 1985 Letter, there is no evidence that any term of this implied agreement included a noncompetition agreement.

---

6

In prior briefs filed by the Plaintiffs, the Plaintiffs argued that the Court should adopt the narrow restraint exception to the statute fashioned by the Ninth Circuit Court of Appeals. Under this approach, only those noncompetition clauses that prevent the restricted party totally from engaging in his business are void. The Plaintiffs argued that, since RAWA may compete with them outside of Los Angles County, the subject noncompetition clause is valid notwithstanding that it falls within any of the exceptions to 16600.

This argument can and must be rejected summarily. In this diversity case, the Court is bound under the Erie doctrine by the rulings of the California Supreme Court as to the interpretation of the statute, even if the Ninth Circuit had interpreted the statute in a different manner. The California Supreme Court in 2008 squarely rejected the Ninth Circuit construction of the statute and effectively ruled that all noncompetition provisions are void no matter how narrowly tailored or otherwise reasonable unless one of the statutory exceptions is applicable:

> Andersen, however, asserts that we should interpret the term "restrain" under section 16600 to mean simply to "prohibit," so that only contracts that totally prohibit an employee from engaging in his or her profession, trade, or business are illegal. It would then follow that a mere limitation on an employee's ability to practice his or her vocation would be permissible under section 16600, as long as it is reasonably based.
>
> ...
>
> Contrary to Andersen's belief, however, California courts have not embraced the Ninth Circuit's narrow-restraint exception. Indeed, no reported California state court decision has endorsed the Ninth Circuit's reasoning, and we are of the view that California courts "have been clear in their expression that section 16600 represents a strong public policy of the state which should not be diluted by judicial fiat." ...Section 16600 is unambiguous, and if the Legislature intended the statute to apply only to restraints that were unreasonable or overbroad, it could have included language to that effect. (7) We reject Andersen's contention that we should adopt a narrow-restraint exception to section 16600 and leave it to the Legislature, if it chooses, either to relax the statutory restrictions or

adopt additional exceptions to the prohibition-against-restraint rule under section 16600.

Edwards v. Arthur Andersen LLP, 44 Cal.4th 937, 946, 946 81 Cal.Rptr.3d 282 (2008).

The narrow restraint cases relied upon by the Plaintiffs thus do not save the subject noncompetition agreement from the statute.

The Court accordingly must grant judgment notwithstanding the verdict on Count II of the Amended Counterclaim to the extent it alleges that the protected area granted by the 1985 Letter was void *ab initio* and seeks a declaration that the Plaintiffs do not have any contractual right to be free from competition by the Defendants in West Los Angeles.

B.  There is no legally sufficient evidence in the record to support the jury verdict that an implied in fact franchise contract exists between the parties

The jury found that an express or implied contract existed between the parties:

Do you find that Plaintiffs David Schwartz and/or RAWI, based on a course of dealing, have an express or implied contract, written or oral, with Defendants Rent /a Wreck of American, Inc. (RAWA) and/or Bundy American LOLL, with respect to Plaintiffs' operation of used rental car business in West Los Angeles?

(Special Verdict 1).  The phrasing of the question makes it impossible to know whether the jury found an express contract, an implied contract, or both.  Viewing the verdict in the light most favorable to the Plaintiffs, the jury found, inter alia, that an express franchise contract exits between the parties.

Although both the Second Amended Complaint and the Joint Pretrial Statement alleged the 1985 Letter as being the only express contract between the parties, the Court implicitly

permitted this claim to be amended to include the letter contract of 1977 and submitted to the

jury the question of whether an express contract had been created. The March 30, 1977 letter

agreement contains no ambiguity with respect to whether it grants the Plaintiffs a franchise.

Paragraph 4 provides as follows:

> 4. Concurrent with the issuance of stock, you will assign, or cause Rent- A-Wreck,
> Inc., a California corporation, to assign to the corporation exclusive rights to the name
> "Rent-A-Wreck" on a worldwide basis, together with an assignment of any other
> trademarks or tradenames utilized by you or Rent-A-Wreck, Inc. in the operation of your
> automobile rental company in West Los Angeles, California. It is expressly understood
> and acknowledged that there shall be excepted from this assignment the territory of Los
> Angeles County. If, however, you or Rent-A -Wreck, Inc. elect at a later date to operate,
> sell, franchise, license assign or otherwise authorize the use of the name Rent A Wreck in
> Los Angles County, such operation, sale franchise, license, assignment shall be done
> through the corporation.

Thus, there is no language whatsoever that could reasonably be construed as the grant of a

franchise in the March 30, 1977 letter.

The March 30, 1977 letter did provide that the Plaintiffs would except Los Angeles

County from the world wide assignment. Subsequent to that letter, however, the evidence is

undisputed that the Plaintiffs gave up this right by making an absolute assignment of the "Rent-

A- Wreck" name to Bundy American Corporation.

Similarly, there is no language in the 1985 Letter that reasonably can be construed as

granting the Plaintiffs a RAWA franchise. While paragraphs 3 and 7, when viewed most

favorably to Schwartz, can be interpreted that Bundy permitted Schwartz to use the name in the

designated area, this language cannot reasonably be construed as a grant of a franchise but merely

as an acknowledgment that he could operate his independent pre-existing used rental car business under the Rent-A-Wreck name.

Finally, assuming arguendo that the 1985 Letter could be reasonably construed as granting the Plaintiffs a RAWA franchise, or that Schwartz's testimony was sufficient to establish an oral contract formed between himself and Bundy American in the 1970s, the 1977 and 1988 assignments conveyed this right back to RAWA. Although Mr. Schwartz testified that the parties nonetheless "understood" that he still retained the right to use the name in Los Angles County, the California parol evidence rule as a matter of law precluded this "understanding" from modifying the clear, unambiguous terms of the two assignments. Cal. Civ. Code § 1836(a)-(f). See also Cal. Civ. Code § 1638. While the parol evidence rule would not preclude the formation of an implied contract subsequent to the assignments, the 1988 assignment effectively terminated any evidence of any express franchise contract, written or oral, that was formed prior to the two assignments.

There is no ambiguity in either assignment that would allow the jury to find that it meant anything other than it said. Certainly, the warranties that the Defendants contend are implied in this assignment by law made it impossible to give effect to any unstated "carve out" of Los Angeles County regardless of what Schwartz "understood." Even if the Court correctly ruled in effect that California would reject the Restatement (Second) of Contract provision providing for

10

the implied warranties of assignment,[2] the express terms of the assignments use the word "all" and any claim of an unstated "carve out" would directly contradict this word.

Nor is there evidence that would support a finding that an express franchise contract was formed subsequent to the 1988 assignment. The evidence was undisputed that the Plaintiffs stopped operating their business from 1987 to 1991 during the period of the lease of the premises to RAWA. There is no evidence that would allow the jury to find that, in 1991 when the Plaintiffs began operating their business, the 1985 Letter somehow sprang back into life and superceded the 1988 assignment. Again, there was no evidence whatsoever of a modification of the 1988 assignment. Nor was there any consideration given to RAWA to support a modification. Moreover, the unvarying contention of Schwartz was that he formed an agreement in the 1970s and that this original agreement was never changed or modified in any way.

The Court accordingly should find that there is no legally sufficient evidence in the record that an express franchise contract exists between the parties and grant judgment notwithstanding the verdict to the extent the verdict reflects an express contract finding.

C. There is no legally sufficient evidence in the record to support the jury verdict that an implied in fact franchise contract exists between the parties

There also is no legally sufficient evidence to support a finding of any implied in fact franchise contract. If the jury found that such an implied in fact contract was formed prior to

---

[2] The Defendants have moved for a new trial on the warranties of assignment count of the Amended Counterclaim on grounds that the refusal to give this instruction was reversible error.

1988, the 1988 assignment terminated this contract and the parol evidence rule as a matter law prevented the jury from considering Schwartz's testimony that the parties' somehow "understood" otherwise. Putting aside the fact that no evidence of any new post-1988 agreement was presented, if the jury found that such an implied in fact contract was formed subsequent to 1988, the lack of any new consideration given to RAWA would make that contract unenforceable.

In addition, the evidence was undisputed that the parties, or their predecessors, entered into *two express contracts* that addressed in part the Plaintiffs' operation of their independent rental car business – the 1977 Letter and the 1985 Letter – and two express contracts concerning the ownership and the right to use the Rent-A-Wreck name – the 1978 and the 1988 assignments. As previously explained, none of these contracts may be construed as granting the Plaintiffs a franchise. The express contracts as a matter of law preclude the finding that an implied contract exists that did grant the Plaintiffs a franchise. Under California law,[3] there cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results." Shapiro v. Wells Fargo Realty Advisors, 152 Cal.App.3d 467, 482, 199 Cal.Rptr. 613 (1984). Cruey v. Gannett Co., 64 Cal.App.4th 356, 76 Cal.Rptr.2d 670 (1998) ("the Camps' express at-will agreement precluded the existence of an implied contract requiring

---

[3] Since the alleged contract was made in California, California law would govern its enforceability and interpretation under Maryland's choice of law rule. Ward v. Nationwide Mutual Automobile Insurance Company, 328 Md. 240, 614 A.2d 85 (1992)("in deciding questions of interpretation and enforceability of contract provisions, a Maryland court ordinarily should apply the law of the jurisdiction where the contract was made. This choice of law principle is referred to as *lex loci contractus*").

good cause for termination"); Eisenberg v. Alameda Newspapers, Inc., 74 Cal.App.4th 1359, 88

Cal.Rptr.2d 802 (1999)(same). The jury can draw only one conclusion from the evidence –that

the parties had an express contract that governed their relationship.[4] This means as a matter of

law that there cannot be an implied in fact contract governing the same subject matter. Judgment

must therefore be entered for the Defendants, and against the Plaintiffs, on Count III of the

Second Amended Complaint..

> The motion for judgment n.o.v. therefore should be granted on Count III of the Second

Amended Complaint.

## II. THE COURT SHOULD ALSO GRANT THE DEFENDANTS' MOTION FOR JUDGMENT ON COUNTS II AND IV OF THE SECOND AMENDED COMPLAINT.

A. Judgment should be granted for the Defendants on Count IV because an implied in law contract cannot exist where the parties have formed an express contract on the subject matter and because specific performance is not a remedy for an implied in law contract

> Count IV of the Second Amended Complaint asks the Court to imply a contract as a

matter of law containing the same terms as the Plaintiffs contend their express contact contains.

This count does not seek damages but only specific performance. The undisputed evidence that

the parties entered into two written contracts, and the jury's finding that the parties have an

express or implied contract are fatal to this claim:

---

[4] The Defendants, of course, agree that they or their predecessors entered into 4 contracts with Mr. Schwartz- the 1977 Letter, the 1978 assignment, the 1985 Letter, and the 1988 assignment. They dispute that any of the alleged implied terms can be found in any of these contracts. For purposes of this motion, however, the Defendants simply point out that the parties are in agreement that express contracts exist between them governing the Plaintiffs' alleged franchise status and these express contracts preclude recovery on the implied in fact or implied in law contracts alleged.

The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.... The reason for this rule is not difficult to discern. When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow.

....We hold that, generally, quasi-contract claims such as quantum meruit and unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists.

County Comm., Caroline Cty. V. J. Roland Dashiell & Sons, 358 Md. 83, 747 A.2d 600 (2000)

quoting in part Mass. Transit Admin. v. Granite Constr. Co., 57 Md. App. 766, 776, 471 A.2d

1121, 1126 (1984).[5] Thus, in County Comm., the Court of Appeals ruled as a matter of law that a

contract implied by law could not exist where the parties had entered into an express contract

covering the same subject matter. 358 Md. at 100-101. See also Bright v. QSP, Inc., 20 F.3d

1300, 1306 (4th Cir.) ("[N]o quasi-contractual recovery is possible `when the parties have clearly

and plainly expressed in writing the actual contract between them'") quoting Shanks v. Wilson,

86 F. Supp. 789, 794 (S.D.W.Va. 1949), cert. denied, 513 U.S. 875, 115S.Ct. 202, 130 L.Ed.2d

133 (1994); In re Chateaugay Corp., 10 F.3d 944, 958 (2d Cir. 1993) ("'[T]he existence of a valid

and enforceable written contract governing a particular subject matter ordinarily precludes

---

[5] Since the Plaintiffs are asking for an implied in law contract be formed at this time that would last in perpetuity, the Defendant believe that Maryland law would govern this claim since the Defendants are located in Maryland and the performance sought from the Defendants contract would be primarily performed in Maryland. Nonetheless, the Defendants are unaware of any authority in California or elsewhere that would reject this rule.

recovery in quasi contract for events arising out of the same subject matter.'" (quoting <u>Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.</u>, 70 N.Y.2d 382, 388, 516 N.E.2d 190, 193 (1987); <u>Sutter Home Winery, Inc. v. Vintage Selections, Ltd.</u>, 971 F.2d 401, 408-09 (9th Cir. 1992)(holding that a party cannot recover on a claim of unjust enrichment where the parties' relationship was governed by a valid express contract); <u>Acorn Structures, Inc. v. Swantz</u>, 846 F.2d 923, 926 (4th Cir. 1988) ("An action for unjust enrichment is quasi-contractual in nature and may not be brought in the face of an express contract."); <u>Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.</u>, 28 F. Supp.2d 947, 950 (E.D.Pa. 1998)("[T]he doctrine of unjust enrichment is inapplicable where the parties' relationship is based upon an express agreement."); <u>Brown v. Coleman Invs., Inc.</u>, 993 F. Supp. 432, 438 (M.D.La. 1998) ("Quasi-contractual remedies may not supplant a contract between the parties." (quoting <u>Marple v. Kurzweg</u>, 902 F.2d 397, 401 (5th Cir. 1990))); <u>Mobil Oil Corp. v. Dade County Esoil Management Co.</u>, 982 F. Supp. 873, 880 (S.D.Fla. 1997) ("It is only upon a showing that an express contract exists that the unjust enrichment . . . count fails").

The Defendants submit that the Court is the finder of fact on this claim but because the evidence permits only one conclusion –viz., that the parties have executed express or implied in fact contracts that govern their relationship – these express contracts preclude the Court from implying a contract as a matter of law governing the same subject matter.

Finally, even assuming arguendo the Court could imply the alleged contract as a matter of law, the sole remedy for a contract implied by law is restitution. Specific performance is not an available remedy. <u>See</u> <u>Mcbride v. Boughton</u>, 123 Cal.App.4th 379, 20 Cal.Rptr.3d 115 (2004).

B. Because there is no franchise contract between the parties, the Court should grant judgment for the Defendants on Count II of the Second Amended Complaint.

Because there is no franchise contract between the parties, the Plaintiffs' request for specific performance of the alleged franchise contract must also be denied. The Court should therefore grant the Defendants' motion for judgment on Count II.

III. THE COURT SHOULD GRANT THE DEFENDANTS A NEW TRIAL ON THEIR COUNTERCLAIMS.

A. The Court should grant the Defendants a new trial because the Court failed to give the instructions proffered by the Defendant

1. The Court erred in failing to give Defendants' Proposed Instruction 4 identifying the implied warranties of assignment

Defendants' Proposed Instruction 6 provided in pertinent part:

> I instruct you that, unless a contrary intention is manifested, one who assigns, or purports to assign, a right by assignment for value warrants to the assignee:
>
> (a) that he will do nothing to defeat or impair the value of the assignment and has no knowledge of any facts that would do so;
>
> (b) that the right, as assigned, actually exists and is subject to no limitations or defenses good against the assignor, other than those stated or apparent at the time of the assignment.
>
> (c) that any writing evidencing the right which is delivered to the assignee ...is genuine and what it purports to be.

Defendants' Proposed Instruction 6. This instruction was based on Restatement (Second) of Contracts § 333(1), as well as numerous cases recognizing this rule. Stone v. Grayson Shops, 173 F.2d 135 (2nd Cir. 1949)("ordinarily, an assignor of a contract right makes an implied warranty "that the right, as assigned, actually exists and is subject to no limitations or defenses other than those stated or apparent at the time of the assignment"); Penowa Coal Sales Co. v. Gibbs & Co.,

199 Md. 114, 85 A.2d 464 (1952)(quoting <u>Restatement</u>);  J. Calamari & J. Perillo, <u>Contracts</u> §§ 18-23, at 661-62 (2d ed. 1977); 3 S. Williston, <u>Contracts</u> § 445, at 316-21 (3d ed. 1960); 4 A. Corbin, <u>Contracts</u> § 904, at 622-25 (1951). Although California courts apparently have not yet had an opportunity to recognize the rule, the rule is an established part of the common law, the Defendants are unaware of any jurisdiction that has rejected the rule, and the Defendants contend California would follow this rule if presented in case.

Defendants' Proposed Instruction 6 clearly was applicable to the facts – the evidence was undisputed that the Plaintiffs twice assigned all right, title, and interest in the Rent-A-Wreck name to RAWA or its predecessor. The Plaintiffs, however, contended that despite the unqualified language in the assignments, everyone "understood" that the Plaintiffs were retaining their right to use the name in Los Angles County. Thus, there was a clear breach of the implied warranty that the assignments were subject to no limitations or defenses good against the assignor, other than those stated or apparent at the time of the assignment. In addition, the evidence was undisputed that the Plaintiffs filed this lawsuit, contended there had been no assignment, and impaired the value of the assignment by arguing that it not affect their right to use the marks. This evidence showed a clear breach of the warranty that the Plaintiffs would do nothing to defeat or impair the value of the assignment and has no knowledge of any facts that would do so.

The Court, however, not only refused to given the instruction but precluded the Plaintiffs from using the word "warranty" at all in their closing argument. (T. April 13, 2010, Page 16 Line 14)(" THE COURT: Now, you -- you have to avoid the word "warranties" because there's no

17

warranty here. You've read in warranty based on the restatement. I don't see that in the language. It's a very simple straight language of assignment. You can say -- I don't preclude you from arguing that what may have been done was inconsistent with the assignment, but it's not a warranty in the sense that it somehow doesn't allow any wiggle room on the other side").

A new trial accordingly must be granted for the failure to give this instruction.

2. Special Verdict 5) and 6)

The Defendants objected to these special verdicts because they did not state the Defendants' counterclaims at all. Rather, they allowed the jury to find in favor of the *Plaintiffs even in the absence of a contract* on grounds that the Defendants somehow expressly or impliedly authorized the Plaintiffs to use the marks. The special verdicts should not have been given and a new trial must be granted because of the improper special verdict submissions.

3. Special Verdict 7)

The Defendants objected to this Special Verdict as contrary to the law. As previously explained, the Defendants were not required to expressly or implicitly reserve any right to terminate use of the mark brought by the Plaintiffs. Under California law, if there was no duration specified in the contracts for the Plaintiff's use of the marks, the Defendants were entitled to terminate that use after a reasonable time upon reasonable notice. A special verdict form that correctly stated the law should be given.

The use of this incorrect verdict form caused the Defendants devastating prejudice. The Defendants never contended that if they had authorized the use of their marks in a contract that they had reserved a right to terminate the contract. Moreover, such a reservation would for all practical purposes be impossible in a contract created by

18

the conduct of the parties. The Defendants instead argued that if any contract had been created it was terminable by either party after a reasonable time upon reasonable notice. Because the jury was incorrectly compelled to answer "no" to Special Verdict 7, they were not allowed to reach in Special Verdict 8 the key question of whether the Defendants had terminated the right to use the marks. The evidence, of course, was undisputed that the Defendants did terminate any right the Plaintiffs had to use the marks by letter dated October 29, 2006. A new trial accordingly must be granted on Counts I, II, and III because of this incorrect special verdict form.

4. Special verdict 10)

The Defendants objected to the phrasing in this instruction. Although the Court in Special Verdict 10 did ask the jury to determine if the Plaintiffs had breached the two assignments – denominated simply as contracts – the jury had no basis to find a breach in the absence of the instruction showing the implied warranties that accompanied the assignment. Absent the instruction, this question presents no issue of fact for a jury determination.  It is undisputed that Mr. Schwartz, on behalf of RAWI, executed written assignments in 1977 and 1988. Similarly, it is undisputed that the current lawsuit brought by Plaintiffs alleged ownership of the marks and that the Defendants had obtained registration of the marks by fraud on the USPTO.

Thus, the real issue to be determined was whether warranties were contained in the assignments. This is a legal issue.  If decided affirmatively, a jury issue respecting damages would indeed be present.

A new trial must be granted because of this improper special verdict submission.

19

B. The Court should grant the Plaintiffs a new trial because the Court erroneously precluded the Defendants from introducing prior deposition testimony of Plaintiff David Schwartz.

1. A new trial should be granted because of the exclusion of the deposition testimony of Mr. Schwartz

Despite the unambiguous command of Fed. R. Civ. Pro. 32(a)(8), the Court refused to allow the jury to be informed of Mr. Schwartz's earlier deposition testimony concerning his claimed franchise.  Fed. R. Civ. Pro. 32(a)(3) expressly allows the use of party's deposition "for any purposes" so long as the conditions set forth in (a)(1) are satisfied. There conditions, of course, were all satisfied with respect to the Schwartz deposition testimony offered.[6]  Fed. R. Civ. Pro. 32(a)(8) provides that this rule applies to depositions taken in earlier actions involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action.

---

[6] During the Defendants' case in chief, the Defendants sought to admit deposition testimony given by Mr. Schwartz on September 18, 2006 in San Diego Car Rentals Gruber and Schwartz v. RAWA, et al, No. BC348790 (Superior Court of the State of California for the County of Los Angeles-Central District). In this case, the Plaintiffs filed a breach of contract and specific performance lawsuit against RAWA arising out of RAWA's alleged failure to perform a merger contract entered into with San Diego Car Rentals. In the lawsuit, Schwartz had alleged that he was a RAWA franchisee. RAWA deposed Mr. Schwartz about this allegation and attempted to obtain documents showing his alleged franchise status in discovery. Schwartz was represented by an attorney at the deposition.

Schwartz initially refused to provide the requested documents and refused to answer questions about his alleged franchise status on grounds this was "private." The Defendants thereafter filed a motion to compel. The state court required Schwartz to produce the requested documents and also sanctioned him for wrongfully holding discovery.  At the trial, the Defendants attempted to introduce video excerpts from the deposition. The Court , however, excluded the testimony.

The Court was informed that the evidence was offered to show Mr. Schwartz's intent, motive, and state of mind. (T. at 100-115, April 7, 2010). The evidence was proffered to shed light on his credibility.  Nonetheless, despite the well known rule that the deposition testimony of an adverse party can be used for "any purpose," the court excluded any reference to this prior testimony, not only the testimony that was contradictory to Schwartz's trial testimony but also any reference to the fact that his testimony was so improper that the state court imposed a monetary sanction on him that exceeded $5,000.  In doing so, the Court reversed without explanation its pretrial ruling that the order could be introduced into evidence.

The Defendants respectfully submit that the exclusion of this evidence entitles the Defendants to a new trial.

As previously noted, the excluded testimony was highly relevant to Mr. Schwartz' motive, intent, and state of mind. These matters, of course,  were crucial to the proper evaluation of the credibility of his claim to hold a perpetual no obligation, all benefit, franchise.  His repeated efforts to conceal the true facts provided a compelling basis for the jury to conclude that his testimony that he had a perpetual all benefits no obligation franchise was uncredible.

Whether there was unauthorized use of RAWA's marks depends in part on whether Mr. Schwartz possessed a franchise. Whether he possessed a franchise depends in large part upon whether Mr. Schwartz testimony, uncorroborated by any other witness, should be believed. The believability of this testimony upon this point should be evaluated by the jury's assessment of Mr. Schwartz' testimony concerning his franchise at his deposition on September 18, 2006.

The Court's refusal to allow the jury to hear and evaluate the 2006 deposition testimony was extremely prejudicial to the Defendants. The Defendants believe that this testimony would have so impaired Schwartz's credulity as to whether he had a franchise that the jury would have rejected this claim. Nor can the exclusion be justified under Fed. R. Evid. 403 on grounds that the prejudicial weight of this testimony outweighed its probative value. Whether the Plaintiffs had a franchise was the single most important issue in the case affecting almost all of the causes of action asserted by both parties. While evidence showing that Schwartz tried to conceal his lack of a franchise was certainly prejudicial to Schwartz's contrary testimony, that is "prejudice" within the meaning of Rule 403. Prejudice for purposes of Rule 403 means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Old Chief v. United States, 519 U.S. 172, 180 (1997); United States v. Rogers, 587 F.3d 816, 822 (7th Cir. 2009) (same).   None of the proffered testimony would have led the jury to make a decision on any improper basis – the testimony simply went to Schwartz's credibility.  A new trial accordingly should be granted because of this prejudicial exclusion of highly probative evidence.

C. The Court improperly excluded or limited the evidence pertaining to other lawsuits filed by Schwartz against RAWA and precluded the Defendants fro arguing to the jury that Schwartz had materially breached the 1985 Letter

A crucial part of the Defendants' case was proving Schwartz's history of vexatious litigation.  The Defendants sought to show that Schwartz brought four law suits over a three-year period, with the California case alone almost bankrupting the company, costing RAWA 1.5 million dollars.  The Defendants sought to show that this litigation was brought to serve

Schwartz's personal goal of regaining control of the company no matter what the cost to the company. The Defendants contended that whether the litigation was in the best interest of the company was a decision for the jury and was not controlled by the subjective intent of Schwartz. The Defendants wanted to show that paragraph 4 of the 1985 letter required that Schwartz always act in the best interest of the company and Schwartz's trial testimony admitted that acting in the best interest of the company, i.e., RAWA, was a material term. The Court insisted that Schwartz denied that it was a material term and did not comment on paragraph 4 in the 1985 letter. The Court forbade the Defendants from any closing argument to this effect. The Court also limited the questioning to whether Schwartz had brought each lawsuit and the outcome of each lawsuit. The Court would not allow the Defendants to prove any of the details of the lawsuits or the economic burden on RAWA they caused. The combination of these judicial actions was devastating on the Defendants. These actions cannot be sustained as within the Court's Rule 403 discretion. These actions when viewed in the context of the overall pattern of the rulings simply prevented the presentation of the Defendants' case.

A major premise of the infringement counterclaim is that Defendants had arrived at the decision to terminate any agreement if Mr. Schwartz had breached a material term of all the claimed agreements –viz., that is, that he would always act in the best interest of the company.

When combined with the exclusion of the videotapes of Mr. Schwartz deposition all deprived the jury of the heart of the Defendants' case concerning infringement. The Defendants had no basis to make a compelling case that Schwartz had materially breached the terms of whatever agreement he had, that the Defendants properly terminated him on October 28, 2006,

and that any use of the tradename after that period was trademark infringement. The Court compounded the error by refusing to allow the Defendants to argue material breach of the contract to the jury. Hence the jury was never presented with a crucial part of the defense case that provided a completely distinct basis for termination of the contract. A new trial should be granted because of this prejudicial error.

### D. The Court erroneously excluded evidence of the attorney fees the Defendants incurred and sought to recover as damages for breach of the warranties of assignment

The Court refused to permit the Defendants to introduce evidence of the attorney fees the Defendants incurred and sought to recover as damages for breach of the warranties of assignment on grounds that the American Rule precluded the recovery of attorney fees. The Defendants, however, did not seek to recover all attorney fees within the meaning of the American Rule but rather to recover the specified attorney fees as damages for the breach of the implied warranties of assignment. California law makes an exception to the American Rule and permits the award of attorney fees as damages where the tort of another plunges the plaintiff into litigation with a third party, Brandt v. Superior Court, 37 Cal.3d 813, 693 P.2d 796 (1985). The Defendants submit that the same rationale permits the recovery of attorney fees and related legal costs as damages when a party's breach of warranties of assignment require the assignee to incur legal costs in defending against the assignor's breach of warranties.

The exclusion of this evidence made the Defendants' warranties of assignment claim meaningless – the only damages that can and could be caused by an assignor who later disputes an assignment is the cost of defending against the assignor's claim that the assignment is invalid.

24

These damages were the exclusive damages claimed by the Defendants on Count IV of the Amended Counterclaim. A new trial accordingly should be granted on this claim.

CONCLUSION

For the reasons stated, the Motion for Judgment NOV should be granted and the Motions for Judgment on the equitable claims should be granted. In the alternative, the Court should grant the Motion for a New Trial.

Respectfully submitted,

_____/s/_____
George W. Shadoan, Bar No. 02541
SHADOAN, MICHAEL & WELLS, LLP
108 Park Avenue
Rockville MD 20850
(301) 762-5150

Attorneys for Defendants