**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND - SOUTHERN DIVISION**

| | |
|---|---|
| **DAVID SCHWARTZ, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No.  07-CV-01679** |
| ) | |
| **J.J.F. MANAGEMENT SERVICES, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ————————————————————————) | |

**<u>DAVID SCHWARTZ'S AND RENT-A-WRECK, INC.'S RENEWED MOTION FOR
JUDGMENT ON THE LAW AND MOTION FOR A JUDGMENT
NOTWITHSTANDING THE JURY'S VERDICT AND MEMORANDUM IN SUPPORT
THEREOF</u>**

Pursuant to Federal Rule of Civil Procedure 50, Plaintiffs/Counter-Defendants David

Schwartz ("Mr. Schwartz") and Rent A Wreck, Inc. ("RAWI") (collectively "Plaintiffs" hereinafter)

orally moved for a Judgment as a Matter of Law before this case was submitted to the jury. They

now supplement that motion with these post-verdict motions for a renewed motion for judgment on

the law and for a judgment notwithstanding the jury's verdict.  Plaintiffs submit that they should be

granted judgment on the grounds first that certain, selected portions of the jury's verdict crossed

over into matters reserved for the judge and that three limited items in the jury's verdict, related to

Counts III of Plaintiffs' Second Amended Complaint[1], were contrary to the weight of the facts and

the law.  The jury's error was limited to the following three issues:

1. Whether Dave Schwartz and his company, RAWI, have a contract with the Defendants

in perpetuity;

---

[1] Counts I, II and IV of Plaintiffs' Second Amended Complaint were not submitted to the
jury.

1

2. Whether Dave Schwartz and his company, RAWI, were and are entitled to the same benefits as all other franchisees of Rent-A-Wreck of America, Inc. ("RAWA") and Bundy American, LLC ("Bundy"), specifically, the right to be included on the national companies' website with appropriate contact information; and

3. Whether Dave Schwartz and his company, RAWI, are entitled to the foregoing benefits without any obligation to pay fees to RAWA or to Bundy.

## **LEGAL STANDARD**

A party is entitled to judgment as a matter of law on an issue following a jury trial if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue." Fed. R. Civ. P. 50(a)(1).  The court may then decide the issue against the non-moving party and "grant a motion for judgment as a matter of law against the [non-moving] party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."  Fed. R. Civ. P. 50(a)(1)(B).  If such motion is made before the case is submitted to the jury but not granted by the court, it is subject to renewal after judgment or after the jury is discharged.  Fed. R. Civ. P. 50(b).

The standard for granting a renewed motion for judgment as a matter of law, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, is precisely the same as the standard for granting the motion prior to the submission to the jury.  See Willis v. Youngblood, 384 F. Supp. 2d 883, 886 (D. Md. 2005) (citing Wright and Miller 9A Federal Practice and Procedure 2d § 2537).  In order to grant a motion for judgment as a matter of law, "the district court must examine the evidence in the light most favorable to the non-moving party and determine 'whether a reasonable trier of fact could draw only one conclusion from the evidence.'" Alliance for Telecomm. Indus. Solutions, Inc. v. Hall, No. CCB-05-440, 2007 U.S. Dist. LEXIS 79934, at *9 (D. Md. Sept. 27, 2007) (citations

omitted).  "If reasonable triers of fact could reach different results, however, the jury's verdict must

be affirmed." <u>Id</u>. at *10.  "More than a scintilla of evidence is needed in support of the non-movant's

case; according to the federal standard, which the Fourth Circuit requires a district court to apply

when sitting in diversity, judgment as a matter of law should be granted when the party opposing

the motion 'has failed to adduce substantial evidence in support of his claim.'"  <u>Id</u>.

**<u>FACTUAL SUPPORT FOR THE INSTANT MOTION</u>**

Although the history of this case reaches back to the early 1970's, the pertinent facts are

simple and virtually undisputed whether looking at oral testimony or written evidence.  The clear

weight of the evidence related to these three items supports this motion:

Defendant RAWA and its predecessors did not originate the name Rent-A-Wreck (RAW).

Defendant Bundy and its predecessors did not originate the name.  Indeed, RAWI did not originate

it either.  David Schwartz originated it sometime on or around 1973.  The three corporations (RAWI,

RAWA and Bundy) derived the name from Mr. Schwartz's first, last, and continuous use of the

name for approximately 37 years.  No one disputes this fact, which was testified to and fully

supported by the paper evidence as well.

On March 30, 1977, four years after David Schwartz had created the used car rental trade

mark, "Rent-A-Wreck" ("RAW"), he and businessman Geoffrey Nathanson agreed to form Bundy

American Corporation ("BAC"), in order to franchise the name RAW (Joint Trial Exhibit, "JTX",

1) and David Schwartz's method of doing business.  <u>See</u>, <u>e.g.</u>, PTX 52, 71, 73, 79, 80, 87.  An

essential part of this agreement was that RAWI (Mr. Schwartz's California corporation operating

at the intersection of Bundy Avenue and West Pico Boulevard) would continue operating in Los

Angeles County using the name RAW, leasing used cars:

You presently own and operate an automobile rental company in West Los Angeles,

3

> California, under the name "Rent-A-Wreck, Inc.", a California corporation, in which you are the sole shareholder.

Id. at p. 1, ¶ A. This agreement was to continue without time limit:

> This agreement shall inure to and be binding upon both of us [Schwartz and Nathanson], our respective heirs, executors, administrators, and permitted assigns.

Id. at p. 3, ¶12.

An integral part of the March 30, 1977, agreement was that RAWI and David Schwartz agreed to transfer whatever ownership rights either of them had in the mark (apart from their usage rights in Los Angeles County) to BAC.  They did exactly this with an assignment of that mark to BAC six weeks later on May 13, 1977 (JTX 2).  This assignment stated simply, without any warranties, that:

> RAWI does hereby assign unto the said BUNDY AMERICAN CORP. All rights, title and interest in and to the said mark, together with the good will of the business symbolized by the mark, the application and the registration to be granted.

JTX 2, third paragraph.  This action was in accord and consistent with the March 30, 1977, agreement, which had provided:

> Concurrent with the issuance of stock, you will assign, or cause Rent-A-Wreck, Inc. a California corporation, to assign to the corporation [BAC] exclusive rights to the name "Rent-A-Wreck" on a worldwide basis, together with an assignment of any other trademarks or trade names utilized by you or Rent-A-Wreck, Inc. in the operation of your automobile rental company in West Los Angeles, California.   It is expressly understood and acknowledged that there shall be excepted from this assignment the territory of Los Angeles County. . . .

JTX 1, ¶ 4.

In the ensuing months of 1977, David Schwartz put together the "how-to" manual to use in selling used car rental franchises and training future franchisees.  PTX 85.  It was David Schwartz's "fleet" and business techniques that became RAWA and Bundy's franchising model for the next twenty-eight years.  See PTX 87 (the employee manual); see also PTX 52,© 2004 ("Schwartz

4

literally wrote the book on Rent-A-Wreck authoring a manual that is still in use today! In the manual, Dave taught his time tested formula for success, a combination of old fashioned honesty and good service along with Dave's considerable acumen in the profitable acquisition and rental of used cars.").

From the origins of the first national franchise company, BAC, in 1977, through the creation of the second national company, RAWA, in 1985, David Schwartz and his California company, RAWI, were treated the same as all of the other franchises and, in that regard, received the benefits of national advertising and were included in the national directories, see, e.g., PTX 5, p. 2, and were an integral part of the training program for new franchisees who were often brought to RAWI's location to be indoctrinated in the business of how to run a RAW franchise. See PTX 52, 87. David Schwartz traveled and interviewed extensively on behalf of the national name and in support of the new franchise network. He was touted then and later as the founder of RAWA. See, e.g., PTX 22-26, 42, 44, 45, 48, 49, 50, 51, 52, 62, 71, 72, 73, 76, 77, 79, and 86; Apr. 6, 2010 T. 85 (testimony of Jason Manelli).

Complementing the paper record, David Schwartz and William Richter (who were the only witnesses to appear and testify about events in 1985) agreed on virtually all of the key points of Plaintiffs' case. These witnesses and the contemporary records from that period twenty-five years ago confirmed that in early 1985, David Schwartz and BAC began discussing the possibility of going public. Toward this end, they brought in William Richter and his national underwriting firm, Richter, Cohen & Co. to undertake the effort. See Apr. 7, 2010, T. 25-28 (testimony of William Richter).

On February 8, 1985, Mr. Schwartz, William Richter, Geoffrey Nathanson and Defendants entered into an agreement to create another national company, RAWA, to raise public funds, which

agreement acknowledged the essential terms of the March 1977 agreement. Specifically, David Schwartz was acknowledged to have the express right to operate RAWI's used rental car business using the RAW mark in an express, defined territory in a part of Los Angeles County, California. (JTX 3, ¶7 and map attached as Exhibit A thereto). Moreover, the February 8, 1985 letter agreement ("the 1985 Letter Agreement") prohibited RAWA from opening another "Rent-A-Wreck" franchise or a RAWA affiliate in Mr. Schwartz's defined territory. Id.

Importantly, the 1985 Letter Agreement gave Mr. Schwartz the right to sell his protected territory to a "third party, subject to a 30-day right of first refusal on the part of RAW[A]." Id. Lastly, this "option to purchase" language of paragraph 7, coupled with express language that paragraph 7 of the 1985 Letter Agreement "**shall continue in full force an effect after June 30, 1985**" while other aspects of the 1985 Letter Agreement were limited in duration, indicated that the parties, at the time of contracting, intended the 1985 Letter Agreement, like its predecessor 1977 agreement, to endure in perpetuity. Id. at ¶¶ 7 & 10.[2]

Three days later, on February 11, 1985, the 1985 Letter Agreement was unanimously ratified by RAWA's board of directors. See Apr. 7, 2010 T. 58-59 (testimony of William Richter) (". . . the board then ratified the contents of this letter and the actions in it."); PTX 96, reflecting the signatures of Messrs. Richter, Nathanson and Schwartz.

Six months later, on August 12, 1985, Defendant RAWA's IPO Prospectus publically confirmed and affirmed Mr. Schwartz's right to use the "Rent-A-Wreck" name in Los Angeles as set forth in the 1985 Letter Agreement. See PTX 111. Specifically, the Prospectus told the world

---

[2] See also Doc. No. 274, Plaintiffs'/Counter-Defendants' Objection to Jury Instruction that the February 8, 1985 Letter Agreement (JTX 3) is Terminable After a Reasonable Time, as incorporated herein.

that Mr. Schwartz retained "the right to the concurrent use of the [Rent-A-Wreck] trade name and trademark at the original Rent-A-Wreck facility owned by him in West Los Angeles." Id., p. 22. Language in the IPO Prospectus was confirmed by a series of documents as well as the parties' long course of dealing thereafter, and by every witness having personal knowledge that testified at trial on this subject. Among the statements made in the IPO were the following:

> The Rent-A-Wreck concept of renting used automobiles was developed in the early 1970's by David Schwartz in Los Angeles, California. In 1977 the Selling Stockholders formed Bundy for the purpose of offering Rent-A-Wreck franchises throughout the United states and internationally. In connection with the formation of Bundy. Schwartz assigned all of his right, title and interest in and to the trade name and trademark "Rent-A-Wreck" to Bundy, retaining the right to the concurrent use of the trade name and trademark at the original Rent-A-Wreck facility owned by him in West Los Angeles.

Id.

> Sixteen of the earliest franchisees, all of whom joined the Rent-A-Wreck system prior to December 1980 pay one annual fee rather than the monthly per-car royalty. These annual license fees range fron $1,000 to $6,600. They are paid in advance on the anniversary date of their respective franchise agreements. As these original franchises expire, or at such time as they might be transferred or sold, the Company intends, to the extent possible, to terminate the old license agreements and to offer the new franchisees a current license agreement.

Id., p. 23.

> David Schwartz was the co-founder of Bundy [American Corporation] and has been Chairman of the Board of Bundy since its inception in 1977 and a Vice President since July 1984. Mr. Schwartz is a selling Stockholder in this offering. He is the originator of the Rent-A-Wreck concept and has owned and operated Bundy Rent-A-Wreck, his West Los Angeles based Rent-A-Wreck facility, the nation's first since 1973. Bundy Rent-A-Wreck operates independently of, and not under a license agreement from, the Company. Mr. Schwartz attended the University of California at Los Angeles.

Id., p. 28

> David Schwartz is the sole owner of Bundy Rent-A-Wreck, the original Rent-A-Wreck location. Bundy Rent-A-Wreck operates independently of, and not under a special license agreement from, the Company, From time to time Bundy Rent-A-Wreck has assisted in the training and/or indoctrination of new franchisees without charge to the Company. In consideration of these services, and in exchange for its agreement to continue furnishing

such services, the Company has agreed to waive all advertising fees for periods commencing after March 31, 1984 and has eliminated in fiscal 1985 the unpaid fee receivable of $53,700 outstanding as of March 31, 1984.

Id., p. 30.

In an effort to resolve outstanding differences between the Selling Stockholders, the Company, the Selling Stockholders, and William L. Richter entered into an agreement dated February 8, 1985, pursuant to which, among other things . . . the parties delineated the protected territory of Bundy Rent-A-Wreck in certain portions of the greater Los Angeles metropolitan area; . . . the Company agreed not to grant any franchises or to open any Company-owned locations in Bundy Rent-A-Wreck's protected territory; and . . . Mr. Schwartz agreed not to operate more than one location within Bundy Rent-A-Wreck's protected territory nor to sell the rights to such territory to anyone other than the Company.

Id., p. 32.

Two years later, in September 1987, Defendant RAWA agreed to lease Mr. Schwartz's business (RAWI) and territory described in the map attached and made a part of JTX 3, whereby they actually stepped into Mr. Schwartz's shoes for the operations of the business for the next three years. See PTX 98; Apr. 7, 2010 (testimony of William Richter) T. 33, 36. The Lease, like the preceding 1985 Letter Agreement, gave RAWA the option to purchase Mr. Schwartz's "business and territory," but the Lease put a price-tag on Mr. Schwartz's territory – "no less than $1,000,000." PTX 98 at ¶ 11(c) (attaching the referenced map of Mr. Schwartz's territory as Exhibit A).

During the period of the Lease, RAWA replaced Mr. Schwartz's original "Bundy Rent-A-Wreck" sign with a stylized "Rent-A-Wreck" sign (and logo) used by Rent-A-Wreck franchisees and began the use of its own stylized rental forms carrying the words RAWA "franchisee" on them. Also during this period, on May 20, 1988, RAWI assigned its trademark rights in the State of California to RAWA. JTX 11.

In September 1990, RAWA terminated the Lease with Mr. Schwartz, and acknowledged Mr. Schwartz's right to resume operating his business under the RAW name in the West LA County area

8

as he had before, leaving Mr. Schwartz to run his business under the stylized "Rent-A-Wreck" sign (and logo) erected by RAWA.  This sign displayed the trademark which Defendant RAWA two decades later unsuccessfully claimed that Mr. Schwartz used to infringe the mark.  See PTX 99.

Defendants' Uniform Franchise Offering Circulars (UFOCs), circulars which the Federal Trade Commission began requiring franchisors to publish in the early 1980s, represented to the public, including in the years 1993, 2001, 2002, 2003, 2004, 2005, 2006 and  2007, *inter alia*, that Mr. Schwartz's business located at 12333 West Pico Boulevard was a RAWA franchisee.  See PTX 86, 22-28.  Indeed, most of Defendants' UFOCs state that Defendants' "founder, David Schwartz, has operated a vehicle rental business under the Rent-A-Wreck name since 1973.  This business is located in Los Angeles, California and **operates under a royalty-free** agreement."  PTX 86, 22 - 26. And Defendants included a list of franchises at the end of the UFOCs that expressly identified RAWI and David Schwartz as a **current franchisee**.  The pattern that went on for more than thirty years was that (1) RAWI was called a franchise (2) under a royalty free agreement.  That this representation was made by the Defendants to potential and actual franchisees for more than three decades cannot be denied and in fact was not denied at trial when Defendants had the opportunity to do so.  Having used this characterization to obtain trademark rights in the first instance and repeated for many, many years to sell franchises, the Defendants now try to assert that it may be summarily terminated.

This year, 2010, marks the fifth decade that Mr. Schwartz has actively promoted the Rent-A-Wreck name.  See, *e.g.*, Apr. 6, 2010 T. 63 (testimony of Jason Manelli describing Mr. Schwartz's favorable interview with *Auto Rental News* in March/April 2010 edition).  During the entire course of this period, Defendant RAWA has asked Mr. Schwartz for promotional assistance – sometimes paying him for his efforts, but many times not – but it has continuously benefitted from Mr.

Schwartz's, name, personal history and  promotional efforts.   At all times it has known of Mr. Schwartz's business location, use of the RAW name and his consistent effort to build goodwill for RAWA.  Dozens of the Defendants' Press Releases and Website stories demonstrate this fact.  PTX 32, 33, 37, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 56, 60, 61, 62, 63, 68, 69, 70, 71, 72, 73, 75, 76, 77, 88, 89, 91, 92, 92, and 93.

Throughout the entire time RAWI and David Schwartz operated at the corner of West Pico Boulevard and Bundy Avenue, "marched to a different drum" with Mr. Schwartz's own fleet selection, his own business methods and his own choices of insurance.  See, e.g., Apr. 7, 2010, T. at 28, 77 (testimony of William. Richter); Apr. 2, 2010 T.120 (testimony of Mr. Schwartz) ("My location was always totally independent . . .").  Mr. Schwartz was depicted by RAWA in its literature, not only as the model of honesty and integrity for future franchisees, but also for RAWA employees. See PTX 44, 45, 49, 52, 87.  Rather than follow corporate rules and regulations on how to operate a used car rental business, he created the model for others to follow.  He helped RAWA and BAC sell franchises, he went to Advisory Council meetings, hosted such meetings in his home, he traveled to new franchise locations and he went to RAWA conventions for franchisees.  See Apr. 8, 2010 T. 124 (testimony of William Rueter); 141-42 (testimony of Lori Shaffron); and 151 (testimony of Mr. Schwartz).

## **LEGAL ARGUMENT**

### A.    **A Reasonable Jury Was Required to Find for Plaintiffs on Count III of the Second Amended Complaint in Light of the Evidence Adduced at Trial.**

Count III of Plaintiffs' Second Amended Complaint requested the Court to find, declare and/or order that: (a) Plaintiffs are allowed to use the "Rent-A-Wreck" name in commerce; (b) Defendants must promote Plaintiffs' business in Defendants RAWA's and Bundy's advertising

campaigns; (c) Defendants must include Plaintiffs' business in its national advertising, including the RAWA website; (d) Plaintiffs are granted an exclusive territory in West Los Angeles, California to operate their business using the "Rent-A-Wreck" name in which no RAWA franchises and/or affiliates of Defendants may operate similar businesses; and (e) Plaintiffs are not required to pay franchise fees, advertising fees or any other fees for the right to use the "Rent-A-Wreck" name or for national advertising support similar and akin to that given to other RAWA franchisees.  Id. at ¶ 64.

On Plaintiffs' contractual claims, the jury was charged with instructions of law pertaining to the definitions of an express and implied contract (J.I. #1); construction of an express or implied contract (J.I. #2); duration of an express or implied contract (J.I. #3); and modification of a written contract (J.I. #4).

Based upon the facts set forth above and below, the evidence adduced at trial, and the applicable law, a reasonable jury could only draw one conclusion:  Plaintiffs had the right to use the Rent-A-Wreck name in commerce, in perpetuity, without a fee, and with the same advertising benefits given to other franchises including the right to be placed on the RAWA website.  Indeed, the only witness with first-hand personal knowledge of the entire course of dealings between the parties, David Schwartz, repeatedly testified that he had the express right to use the name Rent-A-Wreck in his express, exclusive territory, as set forth in the map (JTX 3; PTX 97, 98, and 110A), while paying no fees, and receiving the same benefits as ever other franchisee – such as national advertising on the website.[3]

---

[3]  Few who were called to testify by defendants had no personal knowledge about the foregoing facts.  For instance, John J. ("Jack") Fitzgerald said he knew "only what I read in the newspaper."  Apr. 8, 2010 T.102.  Moreover, Gregg J. Steinbarth said he "didn't have any personal knowledge," because he was 16 years old when Messrs. Schwartz and Nathanson

**1.    This Court must correct the Jury's Erroneous Finding that Plaintiffs must pay fees to Defendants to use the Rent-A-Wreck name in commerce.**

The jury found that Plaintiffs must pay fees or royalties to Defendants in order to continue operating their rental car company under the Rent-A-Wreck banner.  However, the overwhelming quantum of documentary evidence and direct testimony prove, under the preponderance of the evidence standard, that Plaintiffs have either the express or implied contractual right to use the Rent-A-Wreck name without payment of a fee to Defendants.  As to the documents, Defendant RAWA's August 12,1985 Initial Public Offering, told potential franchisees (and Mr. Schwartz) that RAWA forever waived any perceived right to collect advertising fees from Plaintiff:

> Bundy Rent-A-Wreck operates independently of, and not under a special license agreement from, the Company. From time to time Bundy Rent-A-Wreck has assisted in the training and/or indoctrination of new franchisees without charge to the Company. In consideration of these services, and in exchange for its agreement to continue furnishing such services, **the Company has agreed to waive all advertising fees for periods commencing after March 31, 1984 and has eliminated in fiscal 1985 the unpaid fee receivable of $53,700 outstanding as of March 31, 1984.**

PTX 111, p. 30 (emphasis supplied).[4]   And, the documents prove that Defendants' current

---

entered into the 1977 Letter Agreement, and was 24 years old when the 1985 Letter Agreement was executed and ratified. Apr. 7, 2010 T. 151 - 153.

[4] In an exchange with Defendants' counsel, the Court pointed to this Prospectus language which cut in Plaintiffs' favor:

**The Court:**   How about the IPO where [Defendants] say that [Mr. Schwartz's] a, [Defendants] hold him out as someone having an exclusive with a royalty free use? Why aren't [Defendants] benefitting from associating him with the history of the company and holding out publically that he's got entitlements, and now [Defendants] come in at a later point and say, no he doesn't.

Apr. 9, 2010, T. 49:13-18.

ownership, Jack Fitzgerald, and/or management and corporate counsel, Gregg J. Steinbarth, knew of Plaintiffs' "no fee deal" before it bought Defendant companies in January 2006.  See PTX 53 ("Schwartz owns at least 400,000 shares of common stock and operates a franchise royalty free from the Bundy Avenue location.").

The testimony supporting Plaintiffs' "no fee deal" is even more poignant than the documentary evidence.  Mr. Schwartz repeatedly and unequivocally testified that none of Defendants' six management regimes has ever asked either his business or him to pay any fee to use the Rent-A-Wreck name, and/or that neither his business nor he has ever paid any such fee. See e.g. Apr. 1, 2010 T. 88, 91, 92, 93; Apr. 2, 2010 T. 100, 120, 160; Apr. 6, 2010 T. 6, 11, 43, 47, 53; Apr. 9, 2010 T. 14-15.  Likewise, Lori Shaffron, a RAWA employee for more than a decade who ultimately became the Vice President of Sales and Operations, testified that Mr. Schwartz was never requested to pay an advertising fee, franchise fee or any other type of fee.  See Apr. 8, 2010 T. 138. In the same vein, William ("Chip") Rueter, a RAWA Vice President for approximately a decade, confirmed that Plaintiffs operated a RAW franchise without royalty or fee.  See Apr. 8, 2010 T. 116, 120-21.

Defendants' own witnesses, e.g. Jack Fitzgerald, William Richter, Jason Manelli, Mike DeLorenzo, Gregg Steinbarth, never controverted Mr. Schwartz's, Ms. Shaffron's and Mr. Reuter's testimony.  In fact, Mr. Richter, on cross-examination and even re-direct, confirmed that Plaintiffs have never paid a fee to Defendants.  See e.g. Apr. 7, 2010 (testimony of William Richter) T. 72, 80, 82-83, 88-89 ("You choose the battles that you fight and you choose the ones you avoid.  I felt that Mr. Schwartz would be very tenacious on this subject, and I thought the resources of the company and management were better expended trying to grow it and build it profitably with new franchisees that would produce revenue, rather than trying to argue or litigate over one single

territory which he so tenanciously held to and had always accepted.").[5]

Gregg J. Steinbarth, General Counsel to Defendants' parent company, confirmed that the current management of Defendants have never sent a bill to Mr. Schwartz asking him to pay a franchise fee. See Apr. 7, 2010 T. 156.

With all due respect to the jury, their decision was contrary to the overwhelming weight of the evidence (notwithstanding the fact that Plaintiff need only prove their case by a preponderance of the evidence). The uncontroverted record before the jury was that Plaintiffs did not pay for the right to use the "Rent-A-Wreck" name (which Mr. Schwartz created and has actively promoted for five decades). Accordingly, judgment on the issue of "fees" should be rendered in favor of the Plaintiffs notwithstanding the jury's incorrect verdict.

> **2.    This Court must correct the Jury's erroneous finding that Plaintiffs do not have the same advertising benefits as other franchisees.**

The overwhelming quantum of documentary evidence and direct testimony prove, by a preponderance of the evidence, that Plaintiffs have either the express or implied contractual right to receive the same benefits of other franchisees (e.g. inclusion on the RAWA website) without the payment of fees. From the beginning, and spanning over the course of nearly thirty years, Defendants have included Plaintiffs' business in Defendants' franchisee advertising campaigns. See e.g. PTX 5 (Rent-A-Wreck Franchisee Directory dated Fall 1981).

---

[5] Mr. Richter's testimony buttresses Plaintiffs' defenses of acquiescence, laches, waiver, and estoppel. Mr. Richter, a former RAWA director, describes that RAWA felt that attempting to force Mr. Schwartz to pay fees was a fool's errand. Accordingly, RAWA never discussed the issue with Mr. Schwartz. As will be further explored, the Court has noted that the current RAWA management cannot ignore the actions or inactions taken or not taken by its predecessors in interest. See Apr. 9, 2010 T. 47:9-23 (**The Court**: "You know, you have – [Defendants] are tagged with your predecessors' in interest's actions or inactions. It doesn't all start when Mr. Fitzgerald takes over."). Put differently, the current management of Defendants (*i.e.* the Fitzgerald group) cannot rewrite the more than 30 year course of dealing with Mr. Schwartz.

This symbiotic advertising relationship was only logical since Mr. Schwartz was – and for decades continued to be -- the Rent-A-Wreck company spokesman.  Indeed, Mr. Schwartz was the author of many of the now-familiar catch-phrases and quotes repeatedly used by RAWA.  The documentary record is brimming with instances in which Mr. Schwartz campaigned on the Defendants' behalf; he gave interviews for, or appeared in/on *The Wall Street Journal*, *Time Magazine*, *The Los Angeles Times*, *Popular Mechanics* magazine, *The New York Times*, *The Oprah Winfrey Show*, *The Tonight Show with Jay Leno* and, most recently, the *Auto Rental News*.

As time marched on, and the modes and forms of advertising changed from hard-print to cyberspace, this symbiotic advertising relationship continued.  From the inception of Defendants' website (in approximately 1994), Defendant RAWA featured Plaintiffs' business on its website alongside RAWA's other franchisees.  See Apr. 2, 2010 T. 55-56 (testimony of David Schwartz).  And, again, this mutually beneficial relationship was to be expected since Defendant RAWA appropriated Mr. Schwartz's image, name or lore on dozens of instances when explaining its business origins to the public.

The testimony corroborates the documentary evidence to prove, by a preponderance of the evidence, that Mr. Schwartz received at least the same advertising benefits as other franchisees.  Mr. Schwartz repeatedly and consistently testified that he received the same advertising benefits as other franchisees.  See Apr. 1, 2010 T. 88, 91, 92, 93; Apr. 2, 2010 T. 87, 100, 120, 160; Apr. 6, 2010 T. 6, 11, 43, 47, 53.  Mr. Rueter and Ms. Shaffron testified that Mr. Schwartz received the same benefit of advertising as any other franchisee.  See Apr. 8, 2010 T.116, 120-21 (Rueter); Apr. 8, 2010 T. 138 (Shaffron) ("He was treated just like everyone else. He was involved in the directory and phone calls and TV commercials, and he was part of what every other franchise had.").

And Jason Manelli, RAWA's Director of Marketing and Communications since September

1999, confirmed not only that Mr. Schwartz and RAWI were carried on and repeatedly referenced in RAWA's website, but that throughout the history of RAWA's internet press releases and internet posting, RAWA has closely associated the name Rent-A-Wreck with David Schwartz and his personal history.  Apr. 6, 2010, T. 66-67; 83.  In fact, RAWA continued to use Mr. Schwartz's image, name or lore long **after** purportedly removing Plaintiffs' business listing from the RAWA website, thereby, gaining from his lifelong efforts to build goodwill, while denying him the benefits of referral advertising.  See PTX 75; Apr. 6, 2010, T. 68-69 (testimony of Jason Manelli).

> **3.     This Court must correct the Jury's erroneous finding that Plaintiffs do not have rights in perpetuity.**

The overwhelming quantum of direct testimony and documentary evidence prove, by a preponderance of the evidence standard, that Plaintiffs have perpetual express or implied contractual rights to use the Rent-A-Wreck name, without fee, while the receiving the same benefits as other franchisees.  Mr. Schwartz testified that he and Defendant RAWA (of which Mr. Schwartz was the Vice President and a member of the board of directors)[6] understood that his (and his successor's) rights with respect to his usage of the RAW name were perpetual.  See Apr. 1, 2010 T. 104; Apr. 2, 2010 T. 78:22 - 79:1 ("Absolutely.  I mean, the intention and – and the acknowledgment of everyone has been that I gave the name, I gave them the name except for my territory.  I have the territory forever."); 124:21 - 125:1 (Q: I asked you whether your maintained there's something in either of those letters or both of them that gives anybody any idea of how long your arrangement was supposed to last? . . . A: Forever."); 161:4-9 ("Q: Well, the agreement that you are seeking to enforce, I believe, is that you have a right to claim the status of a franchise and all the benefits of a franchise forever and accept none of the obligations of such a franchise.  That's one contention.

---

[6] See PTX 111, p. 28.

That's it, isn't it?  A: Yes, sir."); Apr. 6, 2010  T. 11, 43, 47:18-21 (Q: And what was the exclusive territory supposed to – supposed to convey to you?  A: That I had the use of the name Rent-A-Wreck and that exclusive territory forever."); Apr. 9, 2010 T. 14-15.  Indeed, the Court summarized Mr. Schwartz's testimony on the perpetual duration of his right to use the name RAW by cutting short re-cross examination, commenting, "[Mr. Schwartz] said – he's testified he believes it's perpetual. Have something new and different.  This is re-cross."  See Apr. 6, 2010, T. 59.).

Mr. Richter gave no testimony to dispute Mr. Schwartz's contention that the 1985 Letter Agreement would last forever. In fact, Mr. Richter testified that during his 21-year involvement with RAWA (from 1985 through January 2006), RAWA was not interested in challenging Mr. Schwartz's right to operate in his designated West Los Angeles territory.

Furthermore, the documentary evidence clearly indicates that Plaintiffs (or their successors) would have perpetual rights with respect to his usage of the RAW name.  For instance, the seminal written agreement between Geoffrey Nathanson and Mr. Schwartz, which expressly reserved for Mr. Schwartz the right to use the Rent-A-Wreck name in Los Angeles County, "inure[d] to and [bound] both of us, our respective heirs, executors, administrators, and permitted assigns."  JTX 1, ¶ 12. Hence, Messrs. Nathanson and Schwartz did not intend that Mr. Schwartz's usage rights would cease upon Mr. Schwartz's death (as the jury found), but instead, Mr. Schwartz's rights would survive his death and be transferred to his heirs, executors and administrators.

Additionally, the 1985 Letter Agreement, which reduced Mr. Schwartz's area to a portion of Los Angeles County, provides Mr. Schwartz the right to sell his protected territory to a "third party, subject to a 30-day right of first refusal on the part of RAW[A]."  JTX 3, ¶7.  And, the 1985 letter agreement expressly held that paragraph seven "shall continue in full force an effect **after June 30, 1985**."  JTX 3, ¶10 (emphasis supplied).  It did not modify or alter Mr. Schwartz's rights

to leave his business and territory to his <u>heirs</u>, <u>executors</u> and <u>administrators</u>.

Two years later, the parties again acknowledged the same "option to purchase" Mr. Schwartz's "business and territory" for no less than $1,000,000.  <u>See</u> PTX 98, Lease, ¶ 11(c) (attaching map of Mr. Schwartz's territory as Exhibit A).  The 1987 Lease bound Mr. Schwartz's "personal representatives, successors, and assigns" thereby expressly providing that Mr. Schwartz's rights would survive his death.  <u>Id</u>. at ¶15.

The Court has called into serious question Defendants' argument that the October 28, 2006 "cease and desist" letter can unwind the course of dealings between the parties or cut short contractual rights which have vested in Mr. Schwartz.  The Court had the following exchange with Defendants' counsel:

> **The Court:**  Why does [October 28, 2006] become important?
> **Mr. Shadoan:** Because that is the date when it was put in writing by my client to Mr. Schwartz, stop representing that you are a franchise of Rent-A-Wreck of America.
> **The Court:** Can you revoke acquiescence after 20 years, 18 years and just say stop?
> **Mr. Shadoan:** Just as you can do it if you consent to spousal abuse. There's no date at which you cannot say, stop. Yes, that is exactly –
> **The Court:** I think you need you need to check the law on that.  I'm not, I don't think that's a correct statement of the law.  There is an issue about irrevocability.  And there's Laches which you haven't talked about.  You know, you have – [Defendants] are tagged with your predecessors' in interest's actions or inactions.  It doesn't all start when Mr. Fitzgerald takes over.

Apr. 9, 2010 T. 47:9-23.  Defendants' counsel's simple analogy of Plaintiffs' vested rights to spousal abuse ignores the written contract as well as grossly mischaracterizes the more than thirty-year relationship between Plaintiffs and Defendants.  The testimony of Mr. Schwartz, and the inferences drawn from the language of the 1977 Letter Agreement, the 1985 Letter Agreement and the 1987 Lease contradict the jury's finding that Mr. Schwartz's rights terminate upon his death.

Accordingly, judgment on the issue of "duration" should be rendered in favor of the Plaintiffs notwithstanding the jury's incorrect verdict.

> **B.     Defendants Cannot Adduce Substantial Evidence or Credible Argument to Oppose Plaintiffs' Motion for Judgment Notwithstanding the Jury's Verdict.**

At trial, Defendants sought to rebut Plaintiffs' claims in two ways: (1) Defendants elicited testimony and circumstantial evidence that Mr. Schwartz's previous lawsuits against RAWA, its board of directors and/or its officers were against the best interests of the company; and (2) RAWI's 1977 federal assignment of the Rent-A Wreck tradename and RAWI's 1988 California assignment of the tradename divested Mr. Schwartz and/or RAWI of any title to the tradename Rent-A-Wreck. Neither ground, however, divests Mr. Schwartz and/or RAWI of their right to **use** the Rent-A-Wreck name as they have so used the name, with Defendants' knowledge, since the 1970s.

> **1.     Previous Lawsuits**

Other than reasons suggesting their preference to be able to terminate Mr. Schwartz, the only serious factual contention made by the Defendants supporting their power to do so was that Mr. Schwartz did not act in the best interest of RAWA (as unilaterally decided by J.J.F. Management Services, Inc.) when he sued Defendants.  The Court restricted Defendants' argument at closing (even though Defendants were permitted to make a record of the lawsuits during trial) because (a) Defendants never timely pleaded that they justifiably terminated Plaintiffs' contractual rights (choosing instead to consistently deny the existence of any rights)[7]; (b) Mr. Schwartz testified that acting in the best interest of RAWA was not a material term to the 1985 Letter Agreement (and no

---

[7] As the Court noted, "The flat contention of the defendants in this case throughout has been there is no contract, period, except the contracts of assignment.  So I will not permit you to argue that–that they have been breached." Apr. 10, 2010, T. 38.

one else contradicted his testimony)[8]; and (c) it would be a mockery of contract rights if Defendants, in retaliation for Mr. Schwartz's past lawsuits, were allowed to unilaterally terminate Mr. Schwartz's contractual right to use the "Rent-A-Wreck" name and logo.[9]  Accordingly, Defendants' only serious line of defense was invalid.  Plaintiffs must be found to have perpetual rights to use the "Rent-A-Wreck" name and logo in the well-defined Los Angeles, California territory without the payment of any fee.

**2.    The 1988 Assignment is contradicted by the parties' "Post 1998 Dealings"**

The other highly questionable claim asserted by Defendants was that Schwarz and RAWI's assignments of trademark rights in 1977 (JTX 2) and in 1988 (JTX 11) somehow foreclosed Plaintiffs' right to use the Rent-A-Wreck name, in perpetuity, without a fee.  But this meritless contention was rejected.  On April 9, 2010 an exchange about this assertion led to the Court's comment, "The documents say what they say.  The issue is notwithstanding the documents essentially, is there a course of dealing afterwards by which the parties had an agreement to let Mr.

---

[8] The relevance of the prior suits was argued and the Court ruled that it was "going to exclude virtually all of this evidence under Rule 403," concluding "that there's no indication . . . that there was [such] a material term [in the contract because David Schwartz had no] understanding that he was going to do everything in the opinion of management [that] reflected favorably on the corporation, which is the only way [this evidence] could get . . . in . . ." Apr. 6, 2010 T. 25- 28.

[9] See, _e.g._, April 13, 2010 T. 33-35 (The Court explained that the Defendants' "unilateral view of what was or wasn't in the best interest simply can't dispose of the case."); Apr.13, 2010, T. 40 ("frankly, it's just the corporation that's made this decision at this point, that they don't like what he's done, and therefore that's a basis to terminate him.  What's the legal theory that supports that proposition?  I've never seen it."); Apr.13, 2010, T. 43-44 (The Court noted that "on reflection, I have a serious problem with submitting to this jury the right to terminate, first of all, a contract which the defendants deny exist[s], but allowing that for a moment, allowing that it was properly pled which we question whether it was . . . it just is not a supportable proposition . . . it's just farfetched, frankly, to allow somebody to simply terminate what may be . . . a legitimate contract just because in their judgment the person hasn't acted in the best interest of the corporation.  A shareholder who sues the corporation six ways to Sunday just because management doesn't like him  . . . doesn't somehow lose his rights as a shareholder.").

Schwartz continue with his exclusive non-royalty paying West Los Angeles operation.  That is what the documents necessarily say.  I must tell you very candidly, I don't find that the documents themselves foreclose anything that happened post and it doesn't foreclose evidence of what happened prior to explain what happened post. . . . the relations between Mr. Schwartz and Rent-A-Wreck did not stop in 1988.  There w[ere] a lot of dealings that continued to the benefit of both parties." Apr. 9, 2010 T. 53-53.

As the Court noted, the astounding quantum of evidence of relations between Mr. Schwartz and RAWA establish that the 1988 assignment does not dispose of this case.  Instead, the parties "post 1988 dealings" confirm that Defendants gave Mr. Schwartz and RAWI territorially limited but temporally unlimited  usage rights, without fee, and while receiving the same advertising benefits as other franchisees, including the right to be on the website.  The "post 1988 dealings" are summarized as follows:

- The Lease (PTX 98), which was in force from September 1987 through September 1990, gave Mr. Schwartz (and his personal representatives, successors and assigns) the right to sell his territory to Defendant RAWA for no less than $1 million.

- After the Lease (PTX 98) expired in September 1990, RAWA returned Mr. Schwartz's business and territory to him with the sign (displaying the logo which Defendants now complain that Plaintiffs have infringed) still standing (PTX 99, JTX 16);

- 1993-2005 UFOCs all describe Mr. Schwartz as a franchisee without a duty to pay a fee (PTX 86, 22-27), and the UFOCs list Mr. Schwartz's business in the current list of franchisees (PTX 22-27);

- In 1994, RAWA's website was formed and Plaintiffs were continuously advertised

21

as franchisees until June 10, 2007 when Defendants removed Plaintiffs from the website, which precipitated this suit;

- Mr. Schwartz continued to allow RAWA to use his image, name and person lore to promote RAWA and to sell RAWA franchises;

- Mr. Schwartz attended RAWA conventions and participated in the RAWA advisory council; indeed, he hosted an advisory council dinner at his home in 2005;

- Mr. Schwartz continued to help train new franchisees at his business location;

- In June 1990, Mr. Schwartz loaned RAWA $381,000 on terms more favorable than it could obtain from its bank (PTX 104);

- From 1977 until today – a period which has spanned no fewer than six corporate regimes (Nathanson, Marks, Mudgett, Haigh, Blum, and Fitzgerald) --  Defendants have not opened a Rent-A-Wreck franchise in Plaintiffs' territory;

- Defendants have never sent Plaintiffs a bill to pay royalties of any kind or amount;

- William G. Reuter, III testified that RAWA previously asked Mr. Schwartz for permission to sell new franchisees near his territory;

- Lori Shaffron testified that Mr. Schwartz was inspirational to RAWA employees, was consulted as a resource to sell franchises, and traveled to franchisee grand openings across the United States;

- Ms. Shaffron and Mr. Reuter testified that from 1989-2001 RAWA's corporate understanding was that it had a non terminable, royalty free agreement with Mr. Schwartz whereby Mr. Schwartz operated a Rent-A-Wreck location from an exclusive territory in West Los Angeles, and that gave Mr. Schwartz all the benefits of any other franchisee;

22

- Not once in thirty three years has RAWA or its predecessors attempted to enter the West Los Angeles area without David Schwartz's permission (it did so only once during the abortive 3-year lease period, and then with David's blessing and agreement.)

- On December 9, 2005, prior to the sale of RAWA to an entity indirectly owned by Jack Fitzgerald, Defendants' corporate counsel, Gregg Steinbarth, advised Jack Fitzgerald that Mr. Schwartz operated a royalty free franchise from his Bundy Avenue location (PTX 53);

- Bundy's 2000 Employee Policy Manual, used to train RAWA's own employees, last revised in 2004, effusively lauded Mr. Schwartz as the founder of Rent-A-Wreck; and

- RAWA continued to use the manual David Schwartz wrote in 1977 on "how-to run a franchise" up through at least 2004 per its own website acknowledgments.

In light of this evidence, no reasonable juror could find that Mr. Schwartz did not have a contract with Defendants to: (a) allow Plaintiffs to use the "Rent-A-Wreck" name in commerce; (b) promote Plaintiffs' business in its advertising campaigns; (c) include Plaintiffs' business on the RAWA website and other national advertising; (d) grant Plaintiffs an exclusive territory in West Los Angeles, California to operate their business using the "Rent-A-Wreck" name in which no RAWA franchises and/or affiliates of Defendants will operate a similar business; and (e) not require Plaintiffs to submit to Defendants' control, pay franchise fees, advertising fees or pay any other fees for the right to use the "Rent-A-Wreck" name. The jury's verdict must be revised to conform with the undisputed evidence that Plaintiffs have a perpetual right to use the RAW name, without fee, while receiving the same advertising benefits as other franchisees.

## CONCLUSION

For the foregoing reasons, Plaintiffs must be granted Judgment as a Matter of Law on Count III of Plaintiffs' Second Amended Complaint, and granted Judgment as a Matter of Law in on Counts I, II, IV, and VI of Defendants'/Counter-Plaintiffs' First Amended Counterclaims.

Respectfully submitted,

_____/s/_____
Roger C. Simmons, Bar No. 04363
Jacob I. Weddle, Bar No.28573
Gordon & Simmons, LLC
1050 Key Parkway, Suite 101
Frederick, Maryland 21702
Counsel for Plaintiffs/Counter-Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing David Schwartz's and Rent-A-Wreck, Inc.'s Motion for Judgment as a Matter of Law and Memorandum in Support Thereof, and proposed Order have been served on May 19, 2010, via electronic filing upon:

George W. Shadoan, Bar No. 02541
SHADOAN, MICHAEL & WELLS, LLP
108 Park Avenue
Rockville, MD 20850
(301) 762-5150
Attorneys for Defendants/Counter-claimants

_____/s/_____
Roger C. Simmons, Bar No. 04363

Z:\Schwartz\Rent a Wreck\Pleadings\JNOV.3.wpd