EXHIBIT #1

Case 1:07-cv-01679-PJM   Document 344-1   Filed 09/23/10   Page 1 of 5
Case 1:07-cv-01679-PJM   Document 320-3   Filed 08/27/10   Page 1 of 5

## RENT A WRECK

12333 West Pico Boulevard • Los Angeles, California 90064

(213) 478-0676
1-800-423-2158

February 8, 1985

BY MESSENGER

Mr. William L. Richter
Richter, Cohen & Co.
950 3rd Avenue
New York, New York  10022

Mr. Geoffrey Nathanson
Bundy American Corporation
10889 Wilshire Boulevard
Los Angeles, California 90024-9990

Dear Bill and Geoff:

This letter is to serve as the agreement between us
with respect to the conditions for going forward with the
public offering for Rent-A-Wreck of America, Inc.
(Rent-A-Wreck of America, Inc., together with its subsidi-
aries and successors being "RAW").  To ensure that the
Registration Statement can be filed and in consideration of
the mutual promises and obligations below, we agree as
follows:

1.  We, as the Board of Directors of RAW, shall
take appropriate corporate action to increase the authorized
number of directors from three (3) to five (5), and use our
best efforts to elect two (2) additional independent
directors within forty-five (45) days of the date the public
offering closes ("the Closing Date").  The nominees shall
come from three (3) lists of three (3) nominees each, one
such list to be submitted by each of us.  To ensure that RAW
will obtain good independent directors, the RAW Board shall
take appropriate corporate action to pay these directors a
nominal per meeting fee, plus travel expenses, if any.  The
three of us, however, will receive only reimbursement for our
travel expenses, unless our employment or consulting.
agreements, as the case may be, have been terminated.  In
such case, that director shall be compensated as an outside
director.  In order to ensure that RAW gets off to a good

Exhibit 1

Bundy-941
2008-01-19

#2 - Messrs. Richter and Nathanson - 2/8/85

start, a Board meeting shall be held at least once per month
for the first six months after the Closing Date.  Directors
who are unable to attend such meetings shall participate to
the extent they can by telephone.

　　　　2.  Effective February 11, 1985, RAW shall hire
Fred Mudgett as a consultant.  Mudgett shall review any
matters related to RAW's operations, as RAW's Board of
Directors may determine, and shall report directly to them.
Mudgett's compensation for these consulting services shall be
$2,000 per month, plus expenses.  Mudgett's consulting
relationship with RAW (or any successor) may be terminated at
any time by a majority vote of the Board of Directors.

　　　　3.  Effective with the Closing Date, RAW shall
enter into a three-year employment agreement with me at an
annual salary of $100,000.  The salary shall begin to accrue
from the Closing Date and shall be payable on the first
business day of each month commencing one month from the
Closing Date.  The employment agreement is in consideration
of the activities I currently perform on behalf of .
Rent-A-Wreck (even if not on a full-time basis), and such
other duties that I might be reasonably requested to do by
the Board of Directors of RAW that are within the scope of my
current activities (i.e., field visits, convention
appearances).  I shall not engage in any activities that com-
pete with the business of RAW, except activities in the
protected territory described below, including the running of
my Bundy Rent-A-Wreck operation in West Los Angeles.  Any
accruals or payments of salary to me shall be independent of,
and not offset by, any other amounts that I or my Bundy
Rent-A-Wreck operation may receive.

　　　　4.  Geoffrey Nathanson and I agree not to make
slanderous remarks about each other or RAW and to act in the
best interest of RAW.

　　　　5.  In the event RAW terminates the employment
agreement of either Geoffrey Nathanson or myself, RAW shall
pay the terminated officer the rest of his salary over the
remaining term of the employment agreement provided that such
termination was not for just cause.  "Just cause" shall be
determined in good faith by RAW's Board of Directors, and in
the event such determination is disputed by the terminated
officer, by an independent arbitrator selected by RAW and the
officer.  The determination by such arbitrator of whether the

Exhibit 1

Bundy-942
2008-01-19

#3 - Messrs. Richter and Nathanson - 2/8/85

*(handwritten: related to the public offering)*

termination was for "just cause" shall be binding on both the officer and RAW.

6. The legal fees of O'Melveny & Myers incurred by me to date (approximately $13,000) shall be paid by RAW as expenses of the offering. In addition, RAW shall pay any additional legal fees I incur in the future in connection with the public offering, but in no event shall the total of these payments exceed Twenty Thousand Dollars ($20,000). The above legal fees shall be paid by RAW on the Closing Date; provided, however, that RAW shall have no obligation to pay any of the above legal fees if the public offering is not consummated.

7. RAW hereby agrees that it will grant no franchises, nor open any RAW-owned or affiliated operations in the territory defined as follows: from Rosecrans Avenue east to the Harbor (110) Freeway, north to the Hollywood (101) Freeway, northwest to Mulholland Drive, west to Topanga Canyon Road, south to Tuna Canyon Road, south to the Pacific Ocean and thence south along the Pacific Ocean to Rosecrans Avenue. This protected territory is delineated on the map attached hereto as Exhibit A. I agree not to operate more than one rental location within the protected territory defined above, nor to sell rights to all or any part of such territory to anyone other than RAW. I may, however, relocate my one rental location anywhere within the protected territory, as well as sell it to any third party, subject to a 30-day right of first refusal on the part of RAW.

8. Upon the execution and delivery of this agreement, I shall cooperate fully in the public offering, including, but not limited to, signing the Registration Statement and all amendments thereto that are consistent with this agreement, completing Director's and Officer's Questionnaires, signing all other documents (including minutes) that are required to carry out the public offering and granting to William D. Gould, Eric Chen and William L. Richter, and any of them, the power of attorney with respect to the Registration Statement.

9. Disclosure of the above terms shall be made in the Rent-A-Wreck prospectus and Registration Statement where appropriate.

10. This agreement shall terminate on June 30, 1985 unless the public offering has been consummated or the

*(handwritten margin note, vertical): RAW however, shall continue to have the right to grant franchises and/or open company owned locations outside the protected territory and may purchase from me allow or any of the protected territory...*

Exhibit 1

Bundy-943
2008-01-19

#4 - Messrs. Richter and Nathanson - 2/8/85

Registration Statement has been declared effective by that
time by the Securities & Exchange Commission, and selling
efforts are underway. Notwithstanding the above, however,
Paragraphs 4 and 7 shall continue in full force and effect
after June 30, 1985.

      If the foregoing correctly sets forth our
understanding, please sign in the space provided below and
return this letter to me.

                     Very Truly Yours,

                     David Schwartz

ACCEPTED AND AGREED TO:

William L. Richter

Geoffrey Nathanson

Bundy American Corporation

Geoffrey M. Nathanson    President

Exhibit 1

Bundy-944
2008-01-19



Bundy-945
2008-01-19

Exhibit 1