IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAVID SCHWARTZ, et al. | * |
| Plaintiffs, | * |
| v. | * Civil No. **PJM 07-1679** |
| RENT-A-WRECK OF AMERICA, INC., et al. | * |
| Defendants. | * |

## MEMORANDUM OPINION & ORDER

This case, a contract and franchise dispute, is on remand from the United States Court of Appeals for the Fourth Circuit. On October 5, 2012, this Court ordered the parties to submit written statements of (1) their respective positions regarding "Plaintiffs' rights, entitlements, and obligations under their franchise, as defined by the Fourth Circuit," (2) their respective proposals as to "how Plaintiffs' franchise should be listed on the Rent-A-Wreck website," and (3) their respective positions as to what California competition law claim needs to be tried, as well as discovery proposed in connection with that claim. The Court is now in receipt of the parties' voluminous filings, and issues this Memorandum Opinion in lieu of a hearing. *See* Local Rule 105.6.

### I.

### Brief Background

This case involves a franchise dealing with the rental of used cars, colloquially called "wrecks" – hence, the concept "rent-a-wreck." In 2007, David Schwartz and Rent A Wreck, Inc. (collectively, "Schwartz") sued, among others, an entity known as Rent-A-Wreck of America, Inc. ("Rent-A-Wreck"), for a declaratory judgment establishing that he was entitled to operate a

"Los Angeles Rent-A-Wreck franchise, royalty-free, and without interference." In the most recent iteration of the Complaint, Schwartz sued for declaratory judgment, specific performance, and breach of implied contract. Rent-A-Wreck filed several counter-claims, one of which asserted that the Schwartz franchise was in violation of California competition law, and was therefore "unenforceable as an unlawful restraint on trade."

The case proceeded to trial in April 2010. The jury returned a verdict, finding as follows:

- Schwartz and Rent-A-Wreck had either an express or implied contract with respect to Schwartz's operation of a used car rental business in West Los Angeles;

- A feature of that contract was that Schwartz enjoyed an exclusive Rent-A-Wreck franchise in his favor in West Los Angeles that was designated in or after 1985;

- Schwartz was not entitled to receive the benefits of other franchisees and use the trade name and trademark "Rent-A-Wreck" without also being subject to the obligations imposed on other Rent-A-Wreck franchisees;

- Schwartz was not entitled to the benefits of other franchisees and use of the mark without also paying royalties to Rent-A-Wreck;

- Schwartz could not enjoy the benefits or rights of other franchisees in perpetuity – he could only enjoy them for the duration of his life;

- Rent-A-Wreck or its predecessors expressly and implicitly authorized Schwartz to use the Rent-A-Wreck name and mark, and did not reserve the right to terminate that use;

- Rent-A-Wreck was awarded no damages for Schwartz's use of the Rent-A-Wreck trade name or mark; and

- Schwartz did not breach a written contract between him and Rent-A-Wreck.

Following the verdict, the parties submitted various post-trial motions. In one of those motions, Rent-A-Wreck argued that the Court "must grant judgment notwithstanding the verdict on the jury's finding that the Plaintiffs have an exclusive franchise contract because California law provides that noncompetition agreements of this nature are void *ab initio*."

The Court rejected Rent-A-Wreck's California competition law argument and ultimately issued orders finding, among other things, that Schwartz was entitled to an exclusive franchise in West Los Angeles, but had no obligation to pay royalties to Rent-A-Wreck and was not otherwise subject to the franchise obligations of other, similarly situated Rent-A-Wreck franchisees. Both sides noted an appeal.

The Fourth Circuit affirmed in part, vacated in part, reversed in part, and remanded the case to this Court. *Schwartz v. Rent-A-Wreck of America, Inc.*, 468 F. App'x 238 (4th Cir. 2012). Although the parties spill much ink arguing about what exactly the Fourth Circuit held, it is clear that the opinion contained five pertinent holdings:

1. **California law governs Schwartz and Rent-A-Wreck's contractual relationship.** Maryland choice-of-law rules provide that a contractual claim is governed by "the law of the place where the contract is made, which is the place where the last act required to make a contract binding occurs." *Id.* at 248, n. 9. On the facts of this case, California law applies.

2. **Except as to the finding that Schwartz had no obligation to pay royalties to Rent-A-Wreck, this Court erred in finding that Schwartz is not subject to the obligations of other Rent-A-Wreck franchisees.** *Id.* at 251. The Fourth Circuit affirmed this Court's finding that "a reasonable jury could not have interpreted the course of dealing between the parties to require payment of fees or royalties." *Id.* at 252. Thus, the posture of the parties' business relationship is that Schwartz is subject generally to the obligations of other Rent-A-Wreck franchisees, but not all of them – importantly, Schwartz has no obligation to pay royalties to Rent-A-Wreck.

3. **This Court erred in denying Rent-A-Wreck's post-trial motion on the issue of whether California competition law voids the exclusivity agreement between Schwartz and Rent-A-Wreck.** *Id.* at 251. The exclusivity agreement is valid if it (1) is a franchise agreement, and (2) "does not foreclose competition in a substantial share of the affected line of commerce." *Id.* at 251.

    a. **The first requirement is met.** The jury found that "the implied agreement was a franchise agreement, with the attendant benefits and obligations." *Id.* at 251-52. This Court erred in setting aside that finding. *Id.*

    b. **The second requirement is an issue of fact that must be tried and submitted to a jury.** This Court has been instructed "to submit to a jury the question of

whether the exclusive territory provision forecloses competition in a substantial share of the market for rental cars." *Id.* at 251.

4. **This Court erred in precluding other Rent-A-Wreck affiliates from operating within Schwartz's territory.** *Id.* at 252. The Fourth Circuit held that the jury "could not have concluded that the exclusivity provision of the implied contract foreclosed the continued operation of the Priceless franchises." *Id.* at 253.

5. **This Court's 2011 Order governing the Rent-A-Wreck website is vacated.** With respect to the website, Schwartz's business should receive whatever the typical treatment is that other Rent-A-Wreck franchisees enjoy. *Id.* at 246, n. 8.

With respect to all other decisions of this Court, the Fourth Circuit affirmed.

## II.

### Schwartz's Rights, Entitlements, and Obligations

The first issue the Court addresses is Schwartz's rights, entitlements, and obligations pursuant to his franchise relationship with Rent-A-Wreck. In reversing this Court's ruling that Schwartz is entitled to the benefits of other Rent-A-Wreck franchisees without the attendant obligations, the Fourth Circuit reinstated the jury's verdict that Schwartz could not obtain those benefits unless he agreed "to fulfill the same obligations as other [Rent-A-Wreck] franchisees." *Schwartz*, 468 Fed. Appx at 255–56. Clearly, however, the Fourth Circuit held that (1) Schwartz is not obligated to pay royalties or fees to Rent-A-Wreck, and (2) his franchise differs in duration from those of typical franchisees. *See id.* at 252. A more precise framing of the holding, therefore, is that Schwartz is *generally* subject to the same obligations as other Rent-A-Wreck franchisees, but not all of them. Those obligations include, for example, abiding by minimum fleet requirements, training and hiring employees in accordance with Rent-A-Wreck guidelines, and maintaining appropriate insurance coverage. Such obligations are memorialized in Rent-A-Wreck's Franchise Agreement.

Schwartz takes the position that older documents, such as the 1977 Agreement, the 1977 Assignment, the 1985 Prospectus, the 1988 Assignment, and the various Uniform Franchise Offering Circulars, "should be the touchstone for determining the rights and duties" between him and Rent-A-Wreck. Although Schwartz is correct that the Fourth Circuit did not explicitly reference Rent-A-Wreck's Franchise Agreement, any other reading of the Fourth Circuit's opinion would be inconsistent with that court's holding that Schwartz's obligations must be determined based on an assessment of the obligations of other current Rent-A-Wreck franchisees. Schwartz's prior agreements with Rent-A-Wreck, therefore, cannot be the "touchstone" for determining his rights and obligations.

This Court holds that Schwartz's obligations are largely embodied in the Rent-A-Wreck Franchise Agreement that is currently used with all of its franchisees. Accordingly, the Court **DECLARES** that Schwartz and Rent-A-Wreck are subject to the terms and provisions in the 2011 Rent-A-Wreck Franchise Agreement, with the following exceptions:

- Section 4, "Fees," is inapplicable;

- Section 13, "Assignment," is inapplicable;

- Any Section or sub-provision that permits Rent-A-Wreck to charge a fee or royalty is inapplicable; and

- Any Section or sub-provision that attempts to set or modify the term of the franchise grant insofar as it changes the franchise grant for Schwartz's lifetime is inapplicable.

Schwartz contends that Section 7, "Marketing, Advertising and Promotional Finds," and Section 8, "Trademarks," are also inapplicable because Rent-A-Wreck may rely on them to pressure him out of his franchise. Although that may theoretically be attempted, Schwartz's argument in and of itself is not a basis for setting aside the Fourth Circuit's holding that the obligations of other Rent-A-Wreck franchisees are generally applicable to Schwartz. *See id.* at

251 ("It was reasonable for the jury to conclude that the implied agreement was a franchise agreement, with the attendant benefits *and obligations*, whether or not appellees were actually in compliance with their franchisee obligations."). On the other hand, if Rent-A-Wreck attempts, in any way, to use the Franchise Agreement as a pretext to unduly pressure Schwartz in his normal business operations, or instead to try to drive him out of business, Schwartz will undoubtedly have new claims to assert against Rent-A-Wreck that this Court can and will recognize. Moreover, if the Court finds that Rent-A-Wreck acted in bad faith defiance of the orders of this Court and the Fourth Circuit, such conduct would warrant appropriate sanctions against Rent-A-Wreck. Regardless, that issue is not for the Court to decide at this juncture.

### III.

### Website Listing

The second issue concerns how Schwartz's franchise should be listed on the Rent-A-Wreck website. The Court **ORDERS** that Schwartz's franchise must be listed as follows: "Rent-A-Wreck of West Los Angeles." Rent-A-Wreck consented to this listing, and it seems appropriately tailored to Schwartz's geographic location.[1]

### IV.

### California Competition Law

The third issue is how the trial should proceed with respect to Rent-A-Wreck's California anti-competition law defense. The precise issue for trial, as held by the Fourth Circuit, is whether the following provision of the agreement between Schwartz and Rent-A-Wreck or its predecessor is void under California law:

> [Rent-A-Wreck] hereby agrees that it will grant no franchises, nor open any [Rent-A-Wreck]-owned or affiliated operations in the territory defined as follows:

---

[1] This website listing, does not, of course, necessarily determine the validity of the exclusivity agreement between the parties or the inquiry insofar as the California competition law claim is concerned.

> from Rosecrans Avenue east to the Harbor (110) Freeway, north to the Hollywood (101) Freeway, northwest to Mulholland Drive, west to Topanga Canyon Road, south to Tuna Canyon Road, south to the Pacific Ocean and thence south along the Pacific Ocean to Rosecrans Avenue. This protected territory is delineated on the map attached . . . . I agree not to operate more than one rental location within the protected territory defined above, nor to sell rights to all or any part of such territory to anyone other than [Rent-A-Wreck]. I may, however, relocate my one rental location anywhere within the protected territory, as well as sell it to any third party, subject to a 30-day right of first refusal on the part of [Rent-A-Wreck].[2]

*See* Paper No. 422-2.

The Fourth Circuit held that "the question of whether an exclusive territorial provision forecloses competition in a substantial share of the market of the affected line of commerce . . . is a factual question; therefore, remand is required to permit a factfinder to make that factual finding." *Schwartz*, 468 F. App'x at 255. Thus, the subject of the trial is whether the exclusive territorial provision between Schwartz and Rent-A-Wreck "forecloses competition in a substantial share of the market of the affected line of commerce."

§ 16600 of the California Business and Professions Code provides that, with exceptions, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." This determination "requires knowledge and analysis of the line of commerce, the market area, and the affected share of the relevant market." *Id.* at 250 (quoting *Dayton Time Lock Serv., Inc. v. Silent Watchman Corp.*, 124 Cal. Rptr. 678, 682 (Cal. Ct. App. 1975)).

The parties raise a variety of issues that are, in this Court's view, premature for resolution. Schwartz asserts that (1) the statute of limitations bars Rent-A-Wreck from pursuing this claim, (2) Rent-A-Wreck does not have standing to pursue this claim, (3) there are a variety

---

[2] The following handwritten notation was added: "[Rent-A-Wreck], however, shall continue to have the right to grant franchises and/or open company owned locations outside the protected territory and may purchase from me all or any part of the protected territory."

of affirmative defenses that defeat the claim, (4) the exclusivity agreement is valid by virtue of a rule of reason, and (5) even if Rent-A-Wreck's claim has merit, the Court should enforce the exclusivity agreement for equitable reasons. Rent-A-Wreck asserts that every one of the defenses raised by Schwartz was either rejected by the Fourth Circuit, or is waived because it was not raised on appeal.

The Fourth Circuit's opinion, however, does not take a position on the merits of the California competition law issue one way or another; it says simply that the issue must be tried to a jury. The jury must decide, as a matter of ultimate fact, whether the exclusive territorial provision forecloses competition in a substantial share of the market of the affected line of commerce. At this point, the litigation must continue as would any other lawsuit – with pleadings, discovery, dispositive motions that narrow the issues, and ultimately trial. Accordingly, Rent-A-Wreck is **DIRECTED** to file an amended counter-claim articulating its § 16600 claim against Schwartz. The pleading must conform with the discussion in this Memorandum Opinion and the Fourth Circuit's opinion, and must use as a baseline the original pleading articulating the § 16600 counterclaim. *See* Count 2 of Defendants' First Amended Counterclaims (Paper No. 104). Schwartz is **DIRECTED** to file an amended Answer, and thereafter the case will proceed to discovery. Both parties may file dispositive motions after the close of discovery.

Rent-A-Wreck's final argument is that "[t]here may be no trial unless Schwartz signs [its] Franchise Agreement." In this Court's view, this reads into the Fourth Circuit's opinion much more than is there. The Fourth Circuit affirmed this Court's judgment "that there existed an *implied* contract based on a course of dealing between the parties." *Id.* at 255 (emphasis added). At no point did the Fourth Circuit ever suggest that an *express* contract came into being. From

its inception, this litigation has always been about whether an *implied* contract existed between the parties, and if so, what the terms of that contract were in light of the parties' long course of dealing. The Fourth Circuit may have held that the benefits and obligations of current Rent-A-Wreck franchisees are also applicable to Schwartz, subject to previously noted exceptions, but the reference to the current Rent-A-Wreck Franchise Agreement is relevant only insofar as one may glean from it appropriate terms and conditions of Schwartz's *implied* contract with Rent-A-Wreck. There is no occasion for Schwartz to sign a new written contract.

Subject to further discussion with counsel, trial in this case will begin on June 18, 2013, and is scheduled for four days. The parties are **DIRECTED** to submit a proposed schedule for the filing of Rent-A-Wreck's amended counter-claim, Schwartz's answer, and for discovery. The parties are **DIRECTED**, in this regard, to consult Local Rules 104 through 106 for present purposes. Rent-A-Wreck, as counter-plaintiff, shall be responsible for initiating the pre-trial order. A pre-trial conference will be scheduled for one month prior to the start of trial, the date to be set by Chambers.

A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

DATE:       **January 22, 2013**