IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID SCHWARTZ, *et al.*, | * | |
| Plaintiffs and Counter-Defendants | * | |
| v. | * | Civil No. **PJM 07-1679** |
| RENT-A-WRECK OF AMERICA, *et al.*, | * | |
| Defendants and Counter-Claimants | * | |

## MEMORANDUM OPINION

Rent-a-Wreck is a nationwide franchise business that specializes in the short and mid-term rental of used automobiles.

For nearly 10 years, David Schwartz, the originator of the concept, and Rent A Wreck, Inc. (hereinafter, collectively "Schwartz") and Rent-A-Wreck of America, Inc. ("Rent-A-Wreck") and Bundy American, LLC (hereinafter, collectively "RAWA"), have been doing battle over Schwartz's operation of a RAWA franchise in West Los Angeles, California. Their latest skirmish concerns certain actions on RAWA's part which the Court has found to be contemptuous, and as to which the Court must now consider appropriate sanctions. While the procedural history of the case is long,[1] for present purposes it is sufficient to say that, after two appeals to the Fourth Circuit, the rights and obligations of the parties have been fully established.

---

[1] Schwartz filed suit against RAWA in June 2007. In the last iteration of the Complaint, Schwartz sued for declaratory judgment, specific performance, and breach of contract. In response, RAWA filed various counterclaims, one of which asserted that the Schwartz franchise violated California competition law and constituted an unlawful restraint on trade. The parties' claims proceeded to trial in April 2010. The jury found that Schwartz had a contract with RAWA with respect to Schwartz's operation of a used car rental business in West Los Angeles and that the contract afforded Schwartz the exclusive right to operate a RAWA franchise in West Los Angeles. RAWA subsequently moved under Federal Rule of Civil Procedure 50 to set aside portions of the jury's verdict, arguing, among other things, that California competition law rendered the exclusivity provision *void ab initio*. The Court denied RAWA's Rule 50 Motion and entered a Final Order of Declaratory Judgment on September 23, 2010. ECF No. 344. On appeal, on March 9, 2012, the United States Court of Appeals for the Fourth Circuit issued an opinion

1

After the second appeal became final and the case was remanded to this Court, Schwartz filed a Bill of Costs, seeking $32,665.21 from RAWA. On April 1, 2016, the Clerk of Court issued an Order Taxing Costs in favor of Schwartz and against RAWA in the amount of $13,405.11. ECF No. 525. RAWA then filed a Motion to Review Clerk's Order Taxing Costs, in which RAWA asked that the Court reject Schwartz's Bill of Costs in its entirety or, in the alternative, that it reduce the Clerk's award of costs by $4,442.83. ECF No. 526. The Court denied RAWA's Motion to Review and on July 12, 2016, affirmed the Clerk's Order Taxing Costs. ECF Nos. 535-36. RAWA did not appeal the Order, but did not promptly pay the ordered costs.

On May 3, 2016, Schwartz filed a Motion to Enforce Court's Order and for Contempt. ECF No. 528, which the parties briefed. On September 30, 2016, the Court held a Show Cause Hearing at which it found RAWA in contempt of the Court's Order of March 4, 2011, in that for several weeks, RAWA deliberately directed or permitted its call center operators to advise prospective customers that RAWA had no franchise in what was Schwartz's exclusive Rent-A-Wreck business territory in West Los Angeles.[2] Subsequently, the parties filed extensive correspondence and status reports, leading up to a second hearing on February 27, 2017. *See* ECF Nos. 529 - 567.

---

affirming in part, vacating in part, reversing in part, and remanding the case for further proceedings. ECF No. 395. Of immediate relevance, the Fourth Circuit instructed the Court to submit to a jury the question of whether the exclusive territory provision of Schwartz's contract foreclosed competition in a substantial share of the market for rental cars, and therefore whether Schwartz's franchise was void under California law, as asserted by RAWA. After the second jury trial, the jury found that Schwartz's exclusive territory agreement did *not* foreclose competition in a substantial share of the market for rental cars and accordingly, the Court entered a Final Order of Judgment on Remand in favor of Schwartz on RAWA's counterclaim. On March 10, 2015, the Fourth Circuit issued an opinion affirming the Judgment. ECF No. 517. That court's mandate issued on April 2, 2015. ECF No. 519.

[2] At the September 30, 2016 hearing, after the Court inquired as to the matter, counsel for RAWA handed Schwartz's counsel a check for $13,405.11 to cover the court-ordered costs. The fact that RAWA waited until the filing of Schwartz' Motion and the day of the hearing to make the tender was yet another indication of RAWA's apparent strategy, proclaimed at the outset by RAWA's principal operative, Jack Fitzgerald, to make Schwartz sweat at virtually every stage of the proceedings.

2

For the reasons stated on the record at the September 30, 2016 and February 27, 2017 hearings, and as further set forth in this Memorandum, Schwartz's Motion to Enforce Court's Order and for Contempt, ECF No. 528, will be **GRANTED IN PART** and **DENIED IN PART**.[3]

I.

It is well-established that federal courts possess an inherent power to punish for contempt. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). To establish civil contempt, the moving party must establish each of the following elements by clear and convincing evidence: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that movant suffered harm as a result. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000). "Willfulness is not an element of civil contempt." *Redner's Markets, Inc. v. Joppatowne G.P. Ltd. P'ship*, 608 F. App'x 130, 131 (4th Cir. 2015). Although the movant has the initial burden of showing these elements by clear and convincing evidence, if he meets that burden, the burden of production shifts to respondent to raise a defense on an appropriate ground. *United States v. Darwin Const.*

---

[3] The Court's finding of contempt is confined to RAWA and not its counsel. That said, as has been expressed several times in the course of this case, the Court has concerns that the hand of RAWA's counsel—whether lead counsel or in-house counsel—does seem to have been involved in earlier potentially contemptuous activity, specifically *vis a vis* RAWA's online publication of different false information pertaining to Schwartz's West Los Angeles franchise. Thus, the Court received testimony at the September 30, 2016 hearing indicating that RAWA's outside counsel, Daniel Janssen, Esquire, had directed RAWA to change the address and hours listed for Schwartz's franchise on its website to an outdated address and hours, even though RAWA had previously published the correct information. Janssen did not dispute that fact at that hearing. Later, however, in both the briefing for and at the February 27, 2017 hearing, RAWA contended that it was RAWA's in-house counsel, Greg Steinbarth, Esquire, who gave the change directive, and that he did so over the objection of Janssen. To be clear, that episode is not the basis of the present contempt finding; but it does illustrate the continuously cavalier attitude that RAWA has exhibited toward Schwartz.

3

*Co.*, 679 F. Supp. 531, 534 (D. Md. 1988). *See also In re Minh Vu Hoang*, 2014 WL 1320322, at *4 (Bankr. D. Md. Mar. 28, 2014); *S.E.C. v. SBM Inv. Certificates, Inc.*, 2012 WL 706999, at *10 (D. Md. Mar. 2, 2012).

Schwartz has, by clear and convincing evidence, satisfied all four elements on the part of RAWA.

By written order dated March 4, 2011, the Court ordered that "[RAWA's] Call Center shall in no way attempt to dissuade prospective customers from connecting with [Schwartz's] business or in any way attempt to divert business from [Schwartz's] exclusive business territory to other franchises." ECF No. 382. Schwartz contends that RAWA violated the terms of the Court's March 4, 2011 Order.

The March 4, 2011 Order was unquestionably a valid decree. It was not reversed or vacated by the Fourth Circuit in its Opinion and Order of March 9, 2012. *See* ECF No. 395.[4] Furthermore, RAWA does not dispute that it had actual knowledge of the existence of the March 4, 2011 Order or that the March 4, 2011 Order was in Schwartz's favor.

According to Schwartz, RAWA violated the March 4, 2011 Order when it intentionally diverted prospective customers away from his business. He alleges and has testified based on his own phone calls to RAWA's customer service center that for more than one month, i.e. primarily in April of 2016, employees at the customer service call and email centers systematically informed potential customers inquiring by phone that despite Schwartz's West Los Angeles franchise, no franchise existed there or that Schwartz had ceased operating. Moreover, some customers were directed to a different RAWA franchise in another California city while others were referred to a used car rental company known as Priceless, a non-RAWA but RAWA-related

---

[4] The March 4, 2011 Order was not a declaratory judgment as asserted by RAWA. Rather, it explicitly and coercively directed RAWA to refrain from certain actions.

entity. Schwartz, himself as the caller, has established eight instances in April 2016 when RAWA's call center and email response team falsely represented either that RAWA had no franchise in West Los Angeles or that Schwartz's franchise no longer existed. Based on this conduct, Schwartz submits that RAWA violated the Court's March 4, 2011 Order.

Although RAWA concedes that their call center staff may have wrongly represented that Schwartz's franchise was closed or did not exist, it has argued that a contempt finding is not warranted because these statements were caused by an inadvertent programming error within a March 31, 2016 software update to their online reservation system prepared by a third party. According to RAWA, the programming error removed several franchises, including Schwartz's franchise, from a list used by the call center staff. RAWA alleges that the error did not otherwise affect their public website, which consumers could continue to use to locate and contact Schwartz's franchise. Accordingly, says RAWA, it did not intend to divert business from Schwartz's franchise. Furthermore, RAWA maintains that it did not know about the programming error or its effects until Schwartz served the instant Motion and that it promptly corrected the error at that time. Therefore, according to RAWA, Schwartz cannot prove, at least not by clear and convincing evidence, that its conduct violated the terms of the decree or that it had notice of these violations.

The Court is unconvinced by RAWA's arguments.

There is no question that RAWA's conduct in or about April 2016 violated the terms of the March 4, 2011 Order. When prospective customers contacted RAWA about possibly renting a car in the West Los Angeles area, they were told that there was no RAWA franchise located in West Los Angeles, which, as the Court has had occasion to note, is the second largest city in the United States. Consequently, RAWA diverted or attempted to divert business from Schwartz's

franchise, in clear violation of the order that they "in no way attempt to . . . divert business from [Schwartz's] exclusive business territory to other franchises." Even if the violation occurred due to an inadvertent error—a proposition which the Court flatly rejects—it is irrelevant. "The absence of willfulness does not relieve from civil contempt," and "it matters not with what intent the defendant did the prohibited act." *In re Walters*, 868 F.2d 665, 668 (1989). *See also In re: Galleria Enters. Of Maryland, Ltd.* 102 B.R. 472, 476 (Bankr. D. Md. 1989).

With regard to whether RAWA had actual or constructive knowledge of its violation of the March 24, 2011 Order, the Court looks not only to the facts surrounding the immediately involved violations but considers as well the history and context of the litigation between the parties. RAWA cites *Oce N. Am., Inc. v. MCS Servs., Inc.*, 2011 WL 6130542 (D. Md. Dec. 7, 2011) to argue that negligent, non-willful acts cannot support a contempt finding. *Id.* at *5. However, in *Oce N. Am.*, the employer had e-mailed its employees to advise them about the existence of the court orders and had held conference calls with its employees to explain the court orders to them and to warn them about the need to strictly comply with the orders. *See id.* at *1. Here, not only has RAWA not shown that it took comparable steps; it is simply incredible that RAWA's call center employees could have believed that either RAWA had no franchise in West Los Angeles—the second largest city in the United States—or that one might have shut down virtually overnight without any warning or prior announcement by their superiors. This extreme improbability is highlighted by the fact that RAWA, for nearly nine years, had been engaged in extraordinarily intense litigation with Schwartz regarding the RAWA franchise in West Los Angeles.

The history between the parties adds context. The Court recalls yet again its finding that in 2012 RAWA deliberately changed the address and hours it was listing for Schwartz's

franchise on its website to an outdated address and to patently incorrect hours,[5] even though RAWA had previously published the correct information.[6] The Court also recalls that in January 2013, RAWA unilaterally demanded that Schwartz in a very short time frame either increase his franchise's fleet size from 150 vehicles to 1,726 vehicles or face termination of his franchise. Finally, at the February 27, 2017 court hearing, Schwartz informed the Court and RAWA about a precipitous drop in the number of email inquiries his franchise received from the RAWA website between 2015 and 2017. Following that hearing, RAWA submitted an affidavit from its Vice President explaining that due to yet another third-party programming error, email inquiries from its "Customer Support/Feedback Form" stopped working in late 2016.

Taken together with the earlier direct verbal threats made by RAWA's CEO Jack Fitzgerald to Schwartz that he was going to make things difficult for Schwartz and take everything Schwartz had, the Court concludes that RAWA's diversion of business from Schwartz's franchise in or about April 2016 was clearly and convincingly deliberate and

---

[5] RAWA offers flimsy rationales for its decision to publish information that it knew was outdated and incorrect, including that Schwartz had failed to submit the necessary forms to obtain clearance to move his franchise to a new location. When the Court inquired at the February 27, 2017 hearing as to whether RAWA had sent specific notice to Schwartz informing him of his obligation to submit said forms, RAWA's in-house counsel Steinbarth alluded to a July 24, 2012 letter sent by RAWA's President James Cash to Schwartz. This letter, which notably RAWA had not attempted to enter as an exhibit at any of the hearings, was read into the record following the Court's inquiry. The Court found RAWA's reluctance to enter the letter into the record curious given that it apparently buttressed the argument that RAWA had previously given notice to Schwartz to submit the necessary forms. But from the letter itself it was obvious why RAWA did not offer the letter initially. The letter also advised Schwartz that he could not, at that point, cure the "breach," and that RAWA was prepared to take steps to terminate his franchise. The Court observed that no reference was made to this letter at the second jury trial, which occurred five months after the letter was sent, when it was indisputable that Schwartz was operating at the new address.
[6] Although the Court's finding of contempt is limited to the call center misstatements in or about April 2016, the Court can only conclude that RAWA's publication of the wrong address and hours for Schwartz's franchise also caused harm to Schwartz. This fortifies the Court's conclusion that RAWA has consistently not acted in good faith and underscores that the diversion of business through the call center misstatements that is now before the Court was done intentionally.

7

intentional, not merely accidental or negligent. The Court finds RAWA intentionally violated the March 4, 2011 Order.[7]

Finally, there can be little doubt that Schwartz suffered harm as a result of RAWA's violation. Although lost business and damage to business reputation may be difficult to quantify, it defies experience to believe that they did not result. In any event, the attorneys' fees associated with having to bring RAWA's contemptuous actions to the attention of the Court, as discussed *infra*, are not only real, but unquestionably tangible.

In sum, the Court finds Schwartz has satisfied his *prima facie* burden of showing all four elements for the imposition of civil contempt against RAWA. With that, the burden shifts to RAWA to set forth a valid defense for its violation of the March 4, 2011 Order. *See Darwin Const. Co.*, 679 F. Supp. at 534. RAWA seemingly asserts two defenses: first, that it substantially complied with the Order and second, that it acted in good faith. The Court is persuaded by neither.

To benefit from the substantial compliance defense, the violating party must show that it took all reasonable steps to ensure compliance. *See United States v. Darwin Const. Co.*, 873 F.2d 750, 755 (4th Cir. 1989). Importantly, inadvertent omissions are excused only if such reasonable steps were in fact taken. *Id. See also Darwin Const. Co.*, 679 F. Supp. at 536 ("If a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt." (quoting *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir.1986))).

---

[7] The Court is further convinced that the misstatements perpetuated by RAWA's call center employees were part of an intentional scheme devised by RAWA based on the fact that those employees' statements to customers appear to have come from a pre-written, uniform script. Thus, three different employees responded to potential customers with the words, "Unfortunately, Rent-A-Wreck does not have a location in Los Angeles, California anymore . . ." or some slight variation thereof. It is highly unlikely that these employees spontaneously generated responses virtually identical to those of their colleagues. Clearly someone in RAWA's organization prepared a script for these call center employees to use.

8

RAWA asserts that it substantially complied with the March 4, 2011 Order with respect to the call center misstatements in or about April 2016 and that it only violated that Order due to an inadvertent error. Beyond restating the standard for the substantial compliance defense, RAWA offers very little support for this assertion. Even if the programming error was due to an inadvertent mistake committed by a third party—and the Court does not believe it was—the efforts made by RAWA to ensure that it was not diverting business from Schwartz's franchise were, to say the least, substandard. There is no indication that RAWA alerted, much less instructed, its employees as to the significance of the West Los Angeles franchise. In fact, what seems clear is that the company took absolutely no steps whatsoever to ensure that its employees even knew about the instant litigation, the March 4, 2011 Order, or the importance of treating the West Los Angeles franchise fairly. The substantial compliance defense offers RAWA no shelter.

Whether the defense of good faith is available to civil contempt is open to debate. Courts within the Fourth Circuit have disagreed whether good faith is a stand-alone defense to civil contempt.[8] Here, however, the Court need not consider whether good faith can serve as a defense

---

[8] The Fourth Circuit, in *Consol. Coal Co. v. United Mineworkers of Am., Local 1702*, 683 F.2d 827, (4th Cir.1982), held, "[a] good faith attempt by local union officials to comply with a court's back to work order can be a defense to a civil contempt order, even if those attempts were ineffective." *Id.* at 832. However, in *S.E.C. v. SBM Inv. Certificates, Inc.*, 2012 WL 706999 (D. Md. Mar. 2, 2012), the court stated:

> At one time, the Fourth Circuit considered an alleged contemnor's good faith to be a stand-alone defense to civil contempt. *See Consol. Coal Co. v. United Mineworkers of Am., Local 1702*, 683 F.2d 827, 832 (4th Cir.1982). But because "[t]he absence of wilfulness does not relieve from civil contempt," *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949), the Fourth Circuit subsequently rejected this defense, holding that "good faith alone does not immunize a party from a civil contempt sanction," *McLean v. Cent. States, Se. & Sw. Areas Pension Fund*, 762 F.2d 1204, 1210 (4th Cir.1985) (citing *McComb*, 336 U.S. at 191).

*Id.* at *10 n. 21. This conclusion was recently accepted in *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 2016 WL 1597119 (D. Md. Apr. 20, 2016). *Id.* at *3

to civil contempt because the Court finds, for all the reasons previously stated, that at no time did RAWA demonstrate a good faith attempt to comply with the Court's March 4, 2011 Order. Its failures to advise or instruct its employees about the importance of the West Los Angeles franchise or to advise them as to the outcome of the protracted and intense legal proceedings or of the need to treat Schwartz fairly completely undercut any profession of good faith. Once again, the history of the litigation looms large. Statements by RAWA's CEO Fitzgerald about his intention to see "how high" he could make Schwartz "jump" and how he was going to take everything Schwartz owned, RAWA's decision to change the correct address and hours for Schwartz's franchise listed on RAWA's website to an address and hours it knew were incorrect (having done so on the advice of counsel), RAWA's repeated refusal to change the address and hours back when Schwartz requested RAWA do so, and RAWA's delay in paying court-ordered costs clearly convince the Court that RAWA did not act in good faith when its call center employees diverted business from Schwartz's franchise in or about April 2016.

### III

"The appropriate remedy for civil contempt is within the court's broad discretion." *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995). The court "may impose sanctions for civil contempt to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy." *Id.* at 258. Accordingly, in addition to ordering injunctive relief, a court can order "the contemnor to reimburse the complainant for losses

---

Conversely, numerous courts, including the Fourth Circuit itself, have cited directly to *United Mineworkers of America* without mention of *McLean*, holding that "a good faith attempt to comply as well as substantial compliance or the inability to comply, can be defenses to a civil contempt order." *See, e.g., Dunkin' Donuts, Inc. v. Three Rivers Entm't And Travel*, 42 F. App'x 573, 575 (4th Cir. 2002); *Superior Performers, Inc. v. Meaike*, 2014 WL 3734758, at *3 (M.D.N.C. July 29, 2014); *Chesapeake Bank v. Berger*, 2014 WL 5500872, at *3 (E.D. Va. Oct. 30, 2014), *appeal dismissed*, 629 F. App'x 501 (4th Cir. 2015).

sustained and for reasonable attorney's fees." *See also Enovative Techs., LLC v. Leor*, 86 F. Supp. 3d 445, 447 (D. Md. 2015). A compensatory sanction, however, cannot "exceed the actual loss to the complainant caused by the actions of respondent, lest the contempt fine become punitive in nature, which is not appropriate in a civil contempt proceeding." *Id.* While the moving party "bears the burden of proving both the fact and the amount of its losses," the amount of damages awarded in a contempt finding must only meet the preponderance of the evidence standard. *In re Gen. Motors Corp.*, 110 F.3d 1003, 1016-1018 (4th Cir. 1997).

In addition to injunctive relief, Schwartz seeks monetary relief in the form of attorneys' fees and compensation for lost profits. He seeks $500,000 to recoup his losses from the diversion of business from his territory. He also asks to recover all attorneys' fees he has incurred dating back to the start of the litigation with RAWA in 2007. Alternatively, Schwartz seeks all attorneys' fees related to the current Motion for Contempt, the relevant hearings, and other related filings.

### A. Injunctive Relief

Injunctive relief in this case is not only merited, but necessary and appropriate. In light of RAWA's consistent efforts to undermine Schwartz's business, coercive sanctions will ensure that RAWA in no way continues to divert business from Schwartz's franchise. Accordingly, the Court will order that:

1. RAWA shall publish the correct address, phone number, dates, and hours of operation for Schwartz's franchise on the Rent-A-Wreck website.[9] If any of this information requires amendment at any time in the future, Schwartz should contact RAWA, and RAWA shall update the information on the website without delay.

---

[9] The Court understands that both parties are currently satisfied with the information currently displayed on Rent-A-Wreck's website.

2. RAWA shall employ a pre-recorded dialogue for all incoming calls to its call center.

   The pre-recorded dialogue must substantially be as follows:

   "Thank You for calling the Rent-A-Wreck Customer Care Center. This call may be monitored and recorded for quality assurance and training purposes. For information regarding cities served by our location in the Greater Los Angeles, California area, please press 1. For information about all other locations, please press 2."

   Upon pressing 1 the caller will hear the following message: "Please press 1 for the Greater Los Angles, California area telephone number. Please press 2 for the Greater Los Angles, California area street address. Please press 3 for the Greater Los Angles, California area business hours. Please press 4 for the Greater Los Angles, California area email address."

   Upon pressing 1, the caller will hear the following message on a continuous loop until the caller presses 1 or hangs up: "The phone number is 310-826-7555, 310-826-7555. Please press 1 to return to the previous menu."

   Upon pressing 2, the caller will hear the following message on a continuous loop until the caller presses 1 or hangs up: "The address is 2270 South Centinela Avenue, Los Angeles, California 90064. Please press 1 to return to previous menu."

   Upon pressing 3, the caller will hear the following message on a continuous loop until the caller presses 1 or hangs up: "The business hours are: Monday thru Friday 9:00 AM to 6:00 PM Pacific Time, Saturday 9:00 AM to 4:00 PM Pacific Time, Sunday 10:00 AM to 1:00 PM Pacific Time. Please press 1 to return to previous menu."

   Upon pressing 4, the caller will hear the following message on a continuous loop until the caller presses 1 or hangs up: "The email address is w-r-e-n-t-w-r-e-c-k@aol.com. W-rent-wreck@aol.com. Please press 1 to return to previous menu."

   If any of the information in the pre-recorded dialogue requires amendment at any time in the future, Schwartz shall contact RAWA, and RAWA shall update the recording without delay.

## B. Monetary Relief

### i. Attorneys' Fees and Costs

At a minimum, Schwartz is entitled to an award of attorneys' fees. The Court concludes that he is not entitled to attorneys' fees dating back to the start of the litigation. Without question, however, he is due compensation for attorneys' fees related to bringing and litigating the instant contempt motion. These relate to all the pleadings, preparation, and multiple court appearances required to bring RAWA's contemptuous actions to the Court's attention:

Based upon evidence received at the September 30, 2016 Show Cause Hearing and for all the reasons stated above, the Court finds that RAWA's violation of the Court's March 4, 2011 Order rises to the requisite level of obstinacy or recalcitrance justifying an award of attorneys' fees. *See CapitalSource Fin., LLC v. Delco Oil, Inc.,* Civ. No. DKC–06–2706, 2010 WL 3733934, at *7 (D.Md. Sept. 20, 2010).

To calculate an attorneys' fees award, the Court must calculate the "lodestar" figure, i.e., the number of hours reasonably expended on the litigation multiplied by an hourly rate that is also reasonable. *See Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 243 (4th Cir.2009). *See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986) (holding that the lodestar amount is "the product of reasonable hours times a reasonable rate"). In deciding what constitutes a "reasonable" number of hours expended and "reasonable" hourly rate, the Court is guided by the factors set forth in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron, et al.,* 489 U.S. 87 (1989), and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir. 1978). They include the (1) time and labor required; (2) novelty and difficulty of the questions; (3) skill requisite to perform the legal service properly; (4) preclusion of other

employment by the attorney due to acceptance of the case; (5) customary fee; (6) whether fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and the results obtained; (9) experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) nature and length of professional relationship with the client; and (12) awards in similar cases. The "court enjoys wide discretion" in making its lodestar determination. *See Thompson v. U.S. Dep't of Hous. & Urban Dev.*, No. CIV.A. MGJ-95-309, 2002 WL 31777631, at *13 (D. Md. Nov. 21, 2002) (citing *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986)).

Schwartz's counsel submitted a Fees and Costs Supplement, ECF No. 566-3, accounting for $87,440.00 in attorneys' fees and $2,982.00 in costs, which the Court has carefully reviewed. The Court holds that attorneys' fees in the amount of $60,000.00, roughly two-thirds of what Schwartz seeks, are justified based upon its finding that counsel's billing rates of $200 per hour are reasonable and appropriate, given the time reasonably needed to research the relevant legal issues, prepare motions, and prepare for and appear at the hearings.[10] The Court holds that costs in the amount of $2,982.00 are justified.

Accordingly, RAWA, jointly and severally, shall pay Schwartz $60,000.00 for Schwartz's reasonable attorneys' fees and $2,982.00 for his reasonable costs incurred between April 12, 2016, when his counsel began preparing to file the instant contempt motion, and April 17, 2017, the date Schwartz's last pleadings pertaining to the contempt were filed.

ii. Lost Profits and Reputational Harm

With regard to Schwartz's request for monetary sanctions for lost profits, the Court has no trouble concluding that Schwartz's request for $500,000 is, to put it mildly, over the top. Still,

---

[10] RAWA's complaint that three different attorneys were involved in pursuing the contempt issue for Schwartz is seriously undercut by the fact that RAWA itself has apparently employed at least four attorneys (including in-house counsel) during the course of this litigation.

14

in the Court's view, Schwartz is entitled to some lesser amount for lost profits stemming from both the sales he would have likely made but for RAWA's diversion of business and for the reputational damage he suffered when RAWA broadcast to the public that his franchise was non-existent or shuttered.

It is true that a compensatory civil contempt sanction cannot "exceed the actual loss to the complainant caused by the actions of respondent, lest the contempt fine become punitive in nature, which is not appropriate in a civil contempt proceeding." *Enovative Techs., LLC v. Leor*, 86 F. Supp. 3d 445, 447 (D. Md. 2015). But the profits Schwartz's business lost and the harm to his business' reputation stemming from RAWA's employees' misstatements about the non-existence or closure of his business represent real harms suffered by Schwartz's business and real financial losses stemming from those harms. It is undisputed that for 39 days Schwartz's prospective customers were explicitly told that his business ceased operating or never existed. This clearly caused loss, which the Court is able to reasonably estimate using data supplied by the parties. Moreover, the reputational harm done to Schwartz's business has resulted in and, in the future, will result in actual loss. Therefore, the Court must endeavor to compute with appropriate care the magnitude of this reputational harm.

First, as to lost profits:

As an initial matter, the lost profits are limited to Schwartz's losses caused by RAWA's employees' misstatements. Although the Court recognizes that Schwartz's business was likely affected by RAWA's inaccurate listing of information about Schwartz's franchise on its website and by its allegedly malfunctioning website referral system, the Court's finding of contempt, and compensation for same, is limited to the call center misstatements. *See Goodyear Tire & Rubber*

*Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) ("[A] sanction counts as compensatory only if it is "calibrate[d] to [the] damages caused by" the bad-faith acts on which it is based.").

Aided by averages, historic performance data, and industry-wide statistics provided by the parties,[11] the Court concludes that Schwartz lost $6,879.60 in profits during the period when RAWA diverted business from his franchise. For a total of 39 days, RAWA employees informed potential customers that Schwartz's franchise was closed or non-existent. *See* February 27, 2017 Hearing Transcript, 58. The Court accepts that Schwartz would have received an average of 2.5 referrals from the RAWA Call Center per day but for RAWA's actions.[12] This amounts to a total of 97.5 referrals over the course of the 39 days. Assuming, based on the evidence, that 24% of referrals actually book a reservation; assuming further, that 73.5% of customers who book a reservation actually rent a vehicle;[13] and assuming further, as Schwartz testified, that he received an average profit per rental of $400, the Court concludes that Schwartz lost $6,879.60 in profits.[14]

Then there is the matter of reputational harm.

The damage done to Schwartz's business by RAWA's employees' misstatements did not simply result in profits lost during and around the month of April 2016. There can be little doubt that Schwartz's business also suffered substantial reputational harm. Prospective customers who

---

[11] The sanction imposed by the Court need not be dependent upon proof of actual loss. *See In re Gen. Motors Corp.*, 110 F.3d 1003, 1018, n.16 (4th Cir. 1997) ("[A] civil compensatory sanction need not always be dependent upon proof of actual loss.)" This is especially true given the nature of the contemptuous act—Schwartz cannot possibly know exactly how many potential customers did not call him because of the misinformation provided to them.

[12] In an affidavit attached to his original Motion for Contempt, Schwartz stated that he normally received 2 to 3 referrals from the RAWA Call Center per day. *See* ECF No. 528-14.

[13] Although the parties disagree somewhat about these numbers, the suggested percentages each side suggests are actually relatively close. In reaching its damage calculation, the Court has averaged the parties' suggested percentages. Schwartz asserts that 25% of inquires result in a reservation. RAWA claims it is actually 23%. Schwartz states that 75% of those reservations materialize into actual rentals. RAWA says it is 72%.

[14] This figure represents 2.5 calls per day x 39 days x .24 x .735 x $400 profit per rental.

were falsely told that his business was closed or non-existent may never patronize his business again, and may even have disseminated that falsehood to others. Pursuant to its broad discretion, see *In re Gen. Motors Corp.*, 61 F.3d at 259, the Court has determined to award Schwartz $13,759.20 in reputational damage, representing double his calculated lost profit.

In reaching the decision to award Schwartz that amount, the Court has consulted case law in the commercial defamation and defamation *per se* contexts, where courts have enhanced damages to compensate plaintiffs for harm that is otherwise not easily calculated, especially where, precisely because of defendants' conduct, a plaintiff cannot prove the harm.[15] *See* 15 U.S.C. § 1117(a) (provision in the Lanham Act allowing a court, in its discretion, to award enhanced damages up to three times the amount found as actual damages). *See also Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.*, 994 F. Supp. 350, 380 (W.D.N.C. 1997) (enhanced damages can, "consistent with the 'principles of equity' promoted in Section 35, provide proper redress to an otherwise undercompensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from defendant's conduct"); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 2011 WL 4596043 at *13 (D. Md. Sept. 30, 2011) ("[A]n enhancement of damages can also be used to provide redress to a plaintiff where imprecise

---

[15] These areas of law are particularly helpful considering that, in the course of violating the March 4, 2011 Order, RAWA not only diverted business from Schwartz's franchise, but also defamed Schwartz's business. A plaintiff asserting a claim for defamation under the Lanham Act must establish each of five elements, showing that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 298-99 (4th Cir. 2017). *See* 15 U.S.C. § 1125(a)(2).

damage calculations fail to do justice, especially where the imprecision results from the defendants' conduct."); Maryland Civil Pattern Jury Instructions "MPJI-Cv", 12:7 ("When a person is the subject of a defamatory statement that was made with actual malice there is a presumption that the statement causes that person harm, and relief may be awarded even in the absence of any evidence of actual damages.").

In fact, courts in the past have used the Lanham Act as a guide to structure civil contempt sanctions. *See, e.g., Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1519 (11th Cir. 1990) ("The district court's use of the Lanham Act to guide its structuring of the civil contempt sanction was reasonable and within its discretion. . . . [B]oth he Lanham Act and the civil contempt sanction share a common underlying compensatory goal."); *Colonial Williamsburg Found. v. Kittinger Co.*, 792 F. Supp. 1397, 1407, n.4 (E.D. Va. 1992), *aff'd*, 38 F.3d 133 (4th Cir. 1994) ("A useful analogy in determining what would constitute compensation for violations such as the defendants' is provided by section 35(a) of the Lanham Act. . . . It should be noted that section 35(a) is being used merely as an analogy; Colonial Williamsburg need not have established all the elements of a cause of action under the Lanham Act to be entitled to a disgorging of profits. Similarly, the Court will not hold the defendants to the standard of proof set out in section 35(a) for the deduction of costs."); *Consol. HVAC, Inc. v. All State Plumbing, Inc.*, 2006 WL 2563367, at *5 (D. Md. Aug. 30, 2006). While these civil contempt sanctions stemmed from federal trademark infringement actions originally brought under the Lanham Act, given that RAWA's contemptuous acts closely resemble those of commercial defamation, the relevance of the cases to the instant case remains. With the Lanham Act as a guide, acting within in the broad discretion that the Court is authorized to exercise in fashioning sanctions in a civil

contempt case, the Court awards Schwartz $13,759.20 in reputational damage, representing double his calculated lost profit. *C.f. Consol. HVAC, Inc.*, 2006 WL 2563367, at *15, n.1.

IV.

Summing up, Schwartz's Motion to Enforce Court's Order and for Contempt, ECF No. 528, is **GRANTED IN PART** and **DENIED IN PART**.

RAWA **SHALL** comply with the injunctive relief set forth above. In addition, RAWA, jointly and severally, **SHALL** pay Schwartz $60,000.00 for Schwartz's reasonable attorneys' fees and $2,982.00 reasonable costs incurred between April 12, 2016 and April 17, 2017. Additionally, RAWA, jointly and severally, **SHALL** pay Schwartz $6,879.60 for lost profits suffered by Schwartz's West Los Angeles franchise and RAWA, jointly and severally, **SHALL** pay Schwartz $13,759.20 for reputational damage to Schwartz's West Los Angeles franchise. The total amount payable to Schwartz by RAWA, jointly and severally, shall be $83,620.80. Final Judgment will be entered in favor of Schwartz and against RAWA in that amount.

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

June 29, 2017