IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

DAVID SCHWARTZ, *et al.*     *

       Plaintiffs and Counter-Defendants     *

v.     *     Civil No. PJM 07-1679

RENT-A-WRECK OF AMERICA, *et al.*     *

       Defendants and Counter-Claimants.     *

## MEMORANDUM OPINION

This lawsuit had its beginnings in this Court more than eleven (11) years ago when David Schwartz, on behalf of himself and Rent a Wreck, Inc. (collectively "Schwartz"), sued J.J.F. Management Services, Inc. ("JJFMS"), Bundy American, LLC ("Bundy"), and Rent-A-Wreck of America, Inc. ("RAWA", together, the "Defendants") for breach of contract and specific performance. The essential allegation of the suit was that JJFMS[1] and Defendants were not honoring a Rent-A-Wreck franchise agreement Schwartz held for the Greater Los Angeles area. After years of discovery, counterclaims, trials, appeals, remands, and hearings, final judgment was entered in favor of Schwartz upholding his franchise, but post-judgment and execution problems remained. Some of the post-judgment issues led to a finding of contempt against

---

[1] JJFMS, a Maryland corporation, purchased RAWA on January 26, 2006. On March 25, 2009, the parties filed a Joint Stipulation of Dismissal as to JJFMS, which the Court approved. ECF Nos. 187 & 188.

Defendants RAWA and Bundy American, LLC for violations of this Court's Orders. On June 29, 2017, the Court entered judgment in the contempt proceeding in favor of Schwartz and against Defendants in the amount of $83,620.80. Defendants took no appeal from the Court's contempt award.

However, very shortly thereafter, on July 24, 2017, Defendants filed a bankruptcy proceeding in the Delaware Bankruptcy Court seeking, among other things, to have the franchise agreement with Schwartz discharged. The filing of the bankruptcy proceedings occasioned an automatic stay of Schwartz's collection efforts. But, on February 13, 2018, the Delaware Bankruptcy Court dismissed the proceedings as essentially spurious, and Schwartz immediately renewed his search for RAWA assets to execute upon.

On April 17, 2018, having located two bank accounts in the name of RAWA at Wells Fargo Bank in Baltimore, Maryland, Schwartz filed a Motion for Writs of Garnishment against the accounts. ECF No. 583. Wells Fargo, as Garnishee, confessed assets of Defendant RAWA in an amount that would fully satisfy the amount of Schwartz's claim. ECF No. 592.

On May 2, 2018, JJFMS reappeared, filing a Motion to Intervene in the garnishment proceeding as claimant to the bank accounts Schwartz was attempting to garnish. ECF No. 593. The Court issued an Order ruling that the Motion to Intervene would be treated as a Motion by a Third Party pursuant to Maryland Rule 2-643(e). ECF No. 597.[2]

---

[2] The law of garnishment in Federal Court is established by State law. FED. R. CIV. P. 64. Maryland Rule 2-643(e) provides for intervention by third parties making a claim with respect to a garnished asset. Release of Property from Levy: "A person other than the judgment debtor who claims an interest in property under levy may file a motion requesting that the property be released. The motion shall be served on the judgment creditor and, if reasonably feasible, on the judgment debtor. If the judgment debtor is not served and does not voluntarily appear, the claimant shall file an affidavit showing that

On July 9, 2018, a hearing was held on the Third Party claim of JJFMS to the garnished bank accounts.

For the following reasons, JJFMS's claim of as Third Party to the garnished amount of the bank accounts is **DENIED**.

Garnishee Wells Fargo Bank shall release funds in the bank accounts to Schwartz in the amount of $83,620.80 forthwith.

### I.

The Rent-A-Wreck concept consists of a nationwide franchise business that specializes in the rental of used automobiles. The concept was a brainchild of David Schwartz. For more than 11 years, RAWA has been embroiled in litigation with Schwartz who, when he sold the national franchise operation to a predecessor in interest of JJFMS, reserved a Rent-A-Wreck franchise for himself covering the Greater Los Angeles area. For at least the past several years, RAWA, along with a number of other private companies, has been solely owned by JJFMS. The principal operative of JJFMS is John J. Fitzgerald, Jr., who also serves as Director and Chairman of the Board of Directors at RAWA. While the history of this litigation is fraught with conflict, what has been finally and definitively established is that Schwartz is the owner of the Rent-A-Wreck franchise for the Greater Los Angeles area.

At a hearing on September 30, 2016, the Court found RAWA in contempt of court for multiple violations of this Court's orders (to be mentioned presently). ECF No. 548. At a

---

reasonable efforts have been made to ascertain the whereabouts of the judgment debtor and to provide the judgment debtor with notice of the motion. The court may require further attempts to notify the judgment debtor. The judgment creditor or the judgment debtor may file a response to the motion." MD CODE ANN., MD RULES § 2-643(e) (West 2018)

second hearing held on February 27, 2017, the Court quantified the damages Schwartz sustained as a result of RAWA's contemptuous actions. ECF No. 570. On June 29, 2017, the Court issued a Memorandum Opinion and Order memorializing its finding of contempt against RAWA. ECF No. 580. A Final Order of Judgment in the contempt hearing was entered in favor of Schwartz and against RAWA in the amount of $83,620.80.

Less than a month later, on July 24, 2017, RAWA filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Delaware. ECF No. 594-1 at 11. The immediate effect of the filing, of course, was to stay any action on the part of Schwartz to collect on his judgment.

In the bankruptcy proceeding, on September 1, 2017, RAWA asked the Bankruptcy Judge to reject seven franchise agreements, including Schwartz's. However, in a strongly worded Opinion, dated February 13, 2018, Bankruptcy Judge Laurie Selber Silverstein held that RAWA's bankruptcy filing was entirely bogus—it was in no way justifiable and had not been filed in good faith. Specifically, Judge Silverstein found that RAWA was not in financial distress at the time of its filing and that the bankruptcy was "just another chapter in the attempt to terminate Mr. Schwartz's franchise." ECF No. 594-1 at 36. Defendants' declaration of bankruptcy, rather than being a *bona fide* financial transaction, was described by Judge Silverstein as "fall[ing] on the dark side of the spectrum ranging from the acceptable to the patently abusive." *Id.*

Almost immediately following dismissal of the bankruptcy case, on or around March 6, 2018, JJFMS, the parent company of RAWA, in connection with loans it had purportedly made to RAWA in 2006, entered into Deposit Account Control Agreements (DACA) with respect to

RAWA's bank accounts at Wells Fargo Bank. These agreements were based on a Promissory Note dated March 31, 2006, purportedly executed 12 years before the security agreements were executed. The supposed Promissory Note was in the amount of $2,476,696.47, and bore a maturity date of March 31, 2011, more than seven years before the DACAs were created. The Notes had never been paid, never declared in default, nor indeed is there any evidence that any monies were actually transferred to RAWA.

With the dismissal of RAWA's spurious bankruptcy filing, the automatic stay that had been in place was lifted. Promptly thereafter, having located certain RAWA assets, Schwartz filed his application for Writs of Garnishment with respect to the RAWA accounts at Wells Fargo Bank. ECF No. 583. On April 18, 2018, the Court issued the Writs. ECF No. 585. Within 15 days, JJFMS resurfaced, and filed a Motion to Intervene in the garnishment proceeding, claiming a senior interest in the garnished accounts. ECF No. 593.

The Court set JJFMS's Motion down for hearing, but directed it, in the meantime, to produce documents relevant to its claim, *e.g.* the Promissory Note, the DACAs, etc. On June 11, 2018, JJFMS did produce some documents, including the Promissory Note and the DACAs, ECF No. 598, as well as UCC filings in the State of Delaware that were supposedly filed in April of 2006. JJFMS did not, however, produce UCC filings for the State of Maryland, which were subsequently provided, not by JJFMS but by Schwartz. *See* Exhibits H, I, ECF No. 599. The Maryland UCC statements, in marked contrast to the Delaware State papers, appear to have been filed on March 6, 2017, just days after the February 27, 2017 hearing, just after the Court quantified its contempt finding against Defendants. ECF No. 599 at 14.

On July 9, 2018, the Court held a hearing on the claim of JJFMS that it had a prior claim to the RAWA bank accounts that had been garnished. Only counsel appeared at the hearing; no live witnesses were called either by Schwartz or JJFMS or RAWA.

At the hearing, the Court expressed concern that JJFMS had not produced certain other relevant documents establishing the *bona fides* of the claim it was asserting. It did not produce, among other things, sworn financial statements of JJFMS, RAWA, or Bundy, going back to 2006, which would demonstrate that a legitimate loan had in fact been made, notwithstanding the existence of a promissory note and financing statements. Nor did JJFMS include a statement of any and all payments made to it by RAWA in the 11 years since the "loan" JJFMS had allegedly been made. The Court directed counsel for JJFMS to produce sworn financial statements, for RAWA and Bundy, going back to 2006, the purported year in which the loans were made to RAWA, as well as a ledger of loan payments actually made by JJFMS to RAWA.

After the hearing, JJFMS did produce annual RAWA balance sheets from 2007 through 2018 and a copy of Judge Silverstein's final order from RAWA's and Bundy's bankruptcy proceedings approving post-petition filing for JJFMS. ECF No. 601. After Plaintiffs submitted a letter alleging that JJFMS's production had inadequately complied with the Court's request, ECF No. 602, JJFMS submitted an additional filing containing, among other exhibits, (1) RAWA's 2006 annual balance sheet, (2) an email from January 26, 2006 allegedly demonstrating that the funds comprising the loan to RAWA were ostensibly loaned to MBFG, Inc., RAWA's predecessor in interest, which were then wired to American Stock Transfer, Co., and (3) signed forms from 2006 expressing the written consent of RAWA's Board of Directors and sole shareholder (i.e., JJFMS) to accept the loan from JJFMS. ECF Nos. 603-1, 3–4.

The Court reviews the law against this factual background.

## II.

When a Third Party in a garnishment proceeding such as JJFMS makes a claim of prior right to a garnished asset, the burden of persuasion rests upon it to establish its claim to the garnished property, pursuant to Maryland Rule 2-643(e). *See Guyer v. Snyder*, 133 Md. 19, 104 (1918); *see also Sornberger v. Chesapeake & Ohio Ry. Co.*, 81 Md. App. 14, 26 (1989).

Statutory guidance and case law provide limited guidance as to how a Third Party claim should proceed on a Rule 2-643(e) motion. *See Barry Properties, Inc. v. Blanton & McCleary*, 71 Md. App. 280, 291 (1987) ("Neither Maryland Rule 2–643 nor 2–626 explicitly addresses the question of the court in which the motion is to be filed or the procedure to be followed once the motion has been filed.").[3] However, the Maryland Court of Appeals has recognized the discretion of a trial judge to deny a motion by a third party claimant to or assignee of <u>property</u> in the context of a writ of *fieri facias*,[4] based on a finding that the <u>third</u> party's claim of ownership was not *bona fide*. *See Drury v. Pashen*, 227 Md. 181, 187–88 (1961) (upholding judge's denial of third party motion claiming ownership of levied cows, based in part on the judge's disbelief that the third party's claim of ownership was *bona fide*); *Fetterhoff v. Sheridan*, 94 Md. 445 (1902) ("There can be no doubt that in this state the *bona fides* of the assignment of a debt can be

---

[3] However, in comparable cases, it has been established that a court has discretion to deny a 2-643(e) motion if it finds that a claim by a third party is not *bona fide*. *See, e.g., Transpacific Tire & Wheel, Inc. v. Orteck Intern., Inc.*, No. DKC 06-0187, 2010 WL 4296585, at *2–3 (D. Md. Oct. 29, 2010) (denying motion brought by a third party under Rule 2-643(e) to enjoin Plaintiff from selling a group of vehicles, in order to satisfy a judgment against Defendant, without prior approval by the third party).

[4] *Fieri Facias* is a writ that instructs a sheriff to seize and sell a defendant's property in order to satisfy a monetary judgment against the defendant. *See* MD CODE ANN., CTS. & JUD. PROC. § 11-501 (West 2018).

inquired into under an attachment laid in the hands of a debtor as garnishee.").[5] Since writs of *fieri facias* are functionally similar to garnishment claims, it is reasonable to conclude that similar principles apply to garnishments. *Nw. Nat. Ins. Co. v. William G. Wetherall, Inc.*, 267 Md. 378, 384 (1972) ("An attachment by way of garnishment issued after judgment is a mode of execution and its function is approximately the same as that of a writ of *fieri facias*.").

Case law from other States confirms that a third party's garnishment claim may be denied if it is based on a lack of good faith, even absent a finding of fraud. California, for example, expressly incorporates a good faith requirement into claims of prior right filed by third parties claiming a prior right to property. *Sea Foods Co. v. O.M. Foods Co.*, 150 Cal. App. 4th 769, 783, (2007), *as modified* (May 23, 2007) ("The third party claiming an interest in the property or denying the debt has the burden of proving, by a preponderance of the evidence, that the claim is made in good faith."). Other state courts have allowed trial courts to make determinations of fraud or bad faith in third party garnishment cases, even without an explicit statutory ability to do so. *See Holston Int'l, Inc. v. Coulthard*, 241 Va. 219, 224 (1991); *see also First Nat. Bank of Omaha v. First Cadco Corp.*, 189 Neb. 734, 741(1973).

What it all comes down to, of course, is that the Third Party must establish the validity of its claim. Bad faith usually indicates that, at bottom, the Third Party's claim lacks validity.

### III.

---

[5] While these cases took place before the passage of Md. Rule 2-643(e) in 1983, they obviously provide guidance as to what the standard for evaluating third party claims ought to be, including the proper role of the Court in evaluating the claims.

JJFMS therefore must demonstrate its *bona fide* entitlement to the garnished accounts that has priority over Schwartz's claim. *See Drury*, 227 at 187–88. By a wide stretch, JJFMS has failed to meet this burden.

To begin, it remains highly doubtful that JJFMS ever actually loaned money to RAWA. Beyond that, Schwartz argues persuasively that the questionable timing of the perfection of the "loan" by JJFMS, of the filing of the UCC statements, and of the entry of the Deposit Control Accounts Agreements, particularly since they followed so closely in time the Court's orders and the sham bankruptcy filing, all suggest that the JJFMS claim is not only invalid; it is being made in bad faith if it is not outright fraudulent. Additionally, Schwartz cites the continuous bad faith actions taken by Defendants throughout this litigation which weigh, he submits, strongly in favor of rejecting JJFMS's claim.

The Court agrees with Schwartz. The idea that the JJFMS "loan" to RAWA was made more than 10 years ago, but was never collected on, and was overdue, then suddenly became due when Schwartz came calling is nothing short of preposterous.[6] Despite the Court's express

---

[6] As Judge Silverstein found in her opinion dated February 13, 2018, the Promissory Note obligating RAWA to repay JJFMS matured on March 31, 2011, yet in the seven years since, JJFMS sought no extensions of the maturity date, nor sought to have RAWA declared in default. ECF No. 594-1 at 19–20. Reviewing the documents submitted by Bundy in the bankruptcy proceedings, Judge Silverstein noted that the "Independent Auditors' Report for Bundy and its subsidiaries states that Bundy's consolidated financial statements for the years ending July 31, 2016, 2015, 2014, and 2013 'present fairly, in all material respects' Bundy's financial position and the results of its operations and its cash flows in accordance with GAAP." *Id.* at 20 n.105. Yet, after her review, Judge Silverstein determined that "Bundy's guaranty of the RAWA's obligation on the Promissory Note does not appear to be reflected anywhere in Bundy's Financial Disclosure Document notwithstanding the significant discussion of JJFMS and its affiliated entities." *Id.* Acknowledging that "a guaranty may not be reflected on consolidated balance sheets," Judge Silverstein nevertheless concluded that the Promissory Note "was a guarantee of payment, not collection" that "matured in 2011" and that "no mention of the guaranty" existed in the financial statements that Bundy filed with the Bankruptcy Court. *Id.* Judge Silverstein's conclusions further strengthen the claim that the 2006 payment from JJFMS to RAWA was not a *bona*

request for a ledger statement filed under penalties of perjury indicating how much money was actually transferred to RAWA, as well as any sworn statements as to how much was ever actually paid on the "loan" since its inception, JJFMS provided no such evidence.[7]

Furthermore, it is undisputed that Third Party Claimant JJFMS, RAWA's parent company, is controlled by John J. Fitzgerald, Jr., the same individual who sits as a Director and Chairman of the Board of Directors at RAWA, and a man fairly characterized as Schwartz's perennial arch-opponent (if not arch-enemy), which further calls into question the validity of the JJFMS claim in this case. *See Pepper v. Litton*, 308 U.S. 295 (1939) (holding that an insider cannot abuse his relationship with a fiduciary to the detriment of another creditor).

In JJFMS's Response to David Schwartz's Letter Regarding Financial Statements, it suggests that JJFMS actually transferred funds to MBFG, Inc., an entity independent of RAWA, which a few weeks later merged into RAWA. *See* ECF No. 603-3 at 2. The intended implication is that RAWA thereafter assumed the "loan" from JJFMS to MBFG as a loan on RAWA's books. *See* ECF Nos. 601-1, 603-1. That, of course, in no way explains the nature of the transaction between JJFMS and MBFG. What appears more likely is that, as Schwartz argues, JJFMS loaned money to MBFG so the latter could purchase RAWA in 2006 (for the benefit of JJFMS), and the transaction was then disguised as a "loan" by JJFMS to MBFG.

---

*fide* loan.

[7] Presumably RAWA listed its supposed liability to JJFMS when it filed a statement with the Delaware Bankruptcy Court. All the statement did, however, was list the liability. The statement appears to have been signed by a Michael L. DeLorenzo, whose connection with RAWA is unclear. ECF No. 602, Ex. F at 25. But the statement was filed under penalties of perjury. It would be interesting, albeit in no way necessary, to have heard Mr. DeLorenzo's testimony under oath in the present garnishment proceeding. But JJFMS only appeared through counsel. No live witnesses with personal knowledge, who might have been required to testify under penalties of perjury, were called.

What the money actually may have been was a capital contribution to MBFG, which would mean, of course, that, in merging with MBFG, RAWA should have carried the funds as contribution to capital, not as a liability or loan.

The Court is fully convinced that the only reason RAWA's purported debt to JJFMS was perfected in March 2018 was to frustrate the present garnishment proceedings brought by Schwartz. Defendants' bankruptcy proceedings appear to have been nothing more than thinly-veiled efforts to impede the Court's contempt judgment of June 29, 2017 in favor of Schwartz. Judge Silverstein held that Defendants were "solvent," "not facing pressure from unaffiliated creditors, nor material litigation," and the "lack of credible facts demonstrating financial distress supports a finding that these cases were not filed in good faith." ECF No. 594-1 at 26. Overall, Defendants sought "to use [the bankruptcy proceedings] to redistribute value from a long-time adversary to enrich their ultimate shareholder." *Id.* at 1.

The reappearance of JJFMS recapitulates the sad tale of its and the other Defendants' reproachable tactics throughout this proceeding.

From Day One, John J. Fitzgerald, Jr., the individual, has, at various times, threatened Schwartz, by suggesting that he would take everything that Schwartz owns and telling others that he wanted to see "how high he could make [Schwartz] jump."

Among other efforts to make Schwartz "jump," in 2012, RAWA deliberately changed the address and hours of Schwartz's business on RAWA's website to incorrect and misleading ones, despite having been in possession of the correct information. ECF No. 580 at 6. In 2013, RAWA unilaterally demanded that Schwartz, in very short order, increase the size of his fleet from 150 vehicles to 1,726 vehicles or face termination of his franchise. More recently,

Defendants tried—unsuccessfully—to convince the Court that it was a programming error by a third party programmer that resulted in potential customers calling RAWA headquarters being told (in identical language as if from a prepared script) that there was no Rent-A-Wreck franchise in the Greater Los Angeles area and recommending that the caller use RAWA franchises in satellite cities.

Earlier in the underlying proceedings, Defendants, through counsel, even delayed paying court-ordered costs to Schwartz until the Court, at a hearing, insisted that they be paid. Only then did counsel disingenuously state that he had the check right there and did he hand it to counsel for Schwartz.

At the end of the day, the Motion of JJFMS is one more shameless attempt by Defendants, now by JJFMS as well, to avoid paying the sums that the Court has imposed on RAWA, a sum—it must be emphasized—that itself was imposed in the first place because of RAWA's contempt of Court Orders. The actions of Defendants and JJFMS in this latest chapter of its scorched earth tactics fairly reek of bad faith.

## IV.

For the foregoing reasons, the claim of JJFMS to the garnished bank accounts is **DENIED**.

Wells Fargo shall immediately **RELEASE** the amount in the RAWA accounts to Schwartz up to and including the amount of $83,620.80.

A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

**September 21, 2018**